# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2014 Term**

**FILED**

**May 27, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

**No. 14-0207**

_____

**STATE OF WEST VIRGINIA EX REL. J.C., A MINOR,
BY AND THROUGH HIS MOTHER AND NEXT FRIEND,
MICHELLE COOK, ET AL.,
Plaintiffs Below, Petitioners**

**V.**

**THE HONORABLE JAMES P. MAZZONE, LEAD PRESIDING JUDGE,
ZOLOFT LITIGATION, MASS LITIGATION PANEL;
PFIZER, INC.; ROERIG, A DIVISION OF PFIZER, INC.; AND
GREENSTONE, LLC F/K/A GREENSTONE, LTD,
Defendants Below, Respondents**

_____

**PETITION FOR WRIT OF PROHIBITION**

**WRIT GRANTED**

_____

**Submitted: May 6, 2014**
**Filed:  May 27, 2014**

Bert Ketchum
Greene, Ketchum, Farrell,
Bailey & Tweel
Huntington, West Virginia
and
Ancil G. Ramey
Steptoe & Johnson

Michael J. Farrell
Erik W. Legg
Megan Farrell Woodyard
Farrell, White & Legg
Huntington, West Virginia
and
Mark S. Cheffo

**Huntington, West Virginia**
**Attorneys for Petitioners**

**Quinn Emanuel Urquhart & Sullivan**
**New York, New York**
**Attorneys for Respondents**

**CHIEF JUSTICE DAVIS delivered the Opinion of the Court.**

**JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.**

**JUSTICE KETCHUM, deeming himself disqualified, did not participate in the decision of this case.**

**SYLLABUS BY THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      Rule 20(a) of the West Virginia Rules of Civil Procedure provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief . . . [1] arising out of the same transaction [or] occurrence . . . and [2] if any question of law or fact common to all these persons will arise in the action." Under Rule 20(a), joinder is proper

only if both of these requirements are satisfied.

3.     Rule 3(a) of the West Virginia Rules of Civil Procedure provides that "[f]or a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court." Rule 3(a) is an administrative fee and record keeping provision. The use of multiple case docket numbers is for the purpose of assessing and tracking filing fees, and for tracking documents that may apply to individual plaintiffs. Rule 3(a) does not provide authority for severing a complaint substantively into two or more separate civil cases.

**Davis, Chief Justice:**

In this proceeding, twenty-five plaintiff families (hereinafter collectively "the Petitioners")[1] have invoked the original jurisdiction of this Court to obtain a writ of prohibition to prevent enforcement of an order by the Mass Litigation Panel (hereinafter "the Panel"). The Petitioners were referred by the Chief Justice of this Court to the Panel as two civil actions consisting of nineteen plaintiff families in one action, and six plaintiff families in the other. The Panel entered an order that divested the Petitioners of their status as two civil actions and transformed them substantively into twenty-five separate actions. The Petitioners allege that, as a result of the Panel's order, the overwhelming majority of the Petitioners and their claims will be removed to federal court by the Respondents.[2] The Petitioners now ask this Court to prevent enforcement of the order on the grounds that the Panel did not have authority to substantively alter their status as two civil actions. After a careful review of the briefs, the record submitted, and listening to the argument of the parties, we grant the writ.[3]

---

[1]Each plaintiff family consists of a mother and her child.

[2]The Respondents are the drug manufacturer Pfizer, Inc., and two of its subsidiaries, Roerig and Greenstone, LLC. While it is not clear, the record suggests that Roerig no longer exists.

[3]We wish to acknowledge that the Court invited the Panel to file a brief in this matter. We have considered the Panel's brief and its accompanying appendix.

1

# I.

## FACTUAL AND PROCEDURAL HISTORY

This matter began on July 11, 2012, when nineteen children, by and through their mothers, filed a single complaint alleging products liability and negligence claims against the Respondents in the Circuit Court of Wayne County.[4] The complaint alleged that each child was born with a birth defect as a result of his or her mother ingesting a drug named Zoloft (also called Sertraline) that was manufactured by the Respondents.[5] Consistent with the requirements of Rule 20(a) of the West Virginia Rules of Civil Procedure, the complaint alleged that "joinder of Plaintiffs' claims is proper because Plaintiffs' claims arise out of the same acts and/or omissions of Defendants and/or involve common questions of law and/or fact."[6] Although only one complaint was filed, Rule 3(a) of the West Virginia Rules of Civil Procedure required each plaintiff family to pay a filing fee and be docketed with a separate civil action number.[7]

On August 7, 2012, the Respondents removed the claims of eighteen of the

---

[4]The residency of each plaintiff family was as follows: West Virginia, Michigan, Connecticut, Oklahoma, Texas, Tennessee, Maryland, Oregon, South Carolina, Ohio, New York, Louisiana (2), Pennsylvania (2), Florida (2), and North Carolina (2).

[5]Zoloft is used to treat several disorders that include major depression, acute post traumatic stress, and panic disorder.

[6]The application of Rule 20(a) is discussed fully in Section III. A, *infra*.

[7]The application of Rule 3(a) is discussed fully in Section III. B, *infra*.

plaintiff families to a federal district court in the Southern District of West Virginia.[8] The

Respondents removed the claims on the grounds that, under Rule 3(a), the claims were

actually eighteen separate actions, not one case. While the matter was pending in federal

court, the circuit court clerk filed an affidavit in that proceeding explaining that the separate

civil action numbers assigned to the plaintiffs were solely for administrative filing fee

purposes and that the matter constituted only one case. The plaintiffs filed a motion to

remand the case back to circuit court. The federal district judge granted the motion to

remand. *See J.C. ex rel. Cook v. Pfizer, Inc.*, Nos. 3:12-CV-04103, et al., 2012 WL 4442518

(S.D. W. Va. Sept. 25, 2012).[9]

After the federal district court remanded the case, the Respondents filed a

motion to dismiss the claims asserted by the plaintiff family from New York on the grounds

of *forum non conveniens*.[10] The circuit court denied the motion to dismiss the New York

plaintiff family. The Respondents subsequently filed a petition for writ of prohibition with

---

[8]One of the plaintiff families was not removed because its residency, New York, was the same as the headquarters of Respondent Pfizer.

[9]The Respondents appealed the district court's order. The Fourth Circuit dismissed the appeal on the grounds that it lacked subject matter jurisdiction to address a remand order. *See E.D. ex rel. Darcy v. Pfizer, Inc.*, 722 F.3d 574 (4th Cir. 2013).

[10]This motion to dismiss was an effort to once again remove the case to federal court because complete diversity of jurisdiction would occur if the New York plaintiff family was dismissed from the case. *See Stiftung v. Plains Mktg.*, 603 F.3d 295, 297 (5th Cir. 2010) ("A federal court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same citizenship as any one of the defendants.").

3

this Court seeking to prohibit enforcement of the circuit court's order denying dismissal of the New York plaintiff family. This Court refused the petition.

The Respondents eventually filed a motion to have the nineteen plaintiff families referred to the Panel. Pursuant to the authority of Rule 26.06(c)(3) of the Mass Litigation Rules,[11] the Chief Justice of this Court entered an order on September 24, 2013, denying the motion to refer the plaintiff families to the Panel.[12] Contrary to the Respondents' recitation of the facts, the motion was denied because the plaintiff families' cause of action constituted only one case. The order by the Chief Justice specifically provided "that such Motion to Refer should be denied without prejudice to renew the motion in the event additional state actions are filed."[13]

On October 28, 2013, six children, by and through their mothers, filed a single complaint in the Circuit Court of Wayne County, that also alleged products liability and negligence claims against the Respondents.[14] The complaint alleged that each child was born

---

[11]This rule is presented fully in Section III. C, *infra*.

[12]Justice Benjamin was the Chief Justice at that time.

[13]In order to have a proceeding initiated before the Panel, at least two cases must be referred that meet the definition of "Mass Litigation" under Rule 26.04(a) of the Mass Litigation Rules. This rule is presented fully in Section III. C, *infra*.

[14]The residency of each plaintiff family was as follows: West Virginia, New
(continued...)

4

with a birth defect that was caused by Zoloft.[15] Although only one complaint was filed, each plaintiff family was required to pay a filing fee and be docketed with a separate civil action number. On the same date that the complaint was filed, the circuit court entered an order consolidating the complaint of the six plaintiff families with the previously filed complaint of the nineteen plaintiff families.

After the two complaints were consolidated, the Petitioners filed a motion to refer the matter to the Panel on December 2, 2013. On January 14, 2014, the Chief Justice of this Court entered an order transferring the two consolidated cases to the Panel.[16]

Prior to the two cases being transferred to the Panel, the Respondents filed a second notice of removal in federal court on December 23, 2013. In this second removal attempt, the Respondents named all nineteen plaintiff families that filed the first complaint.[17]

---

[14](...continued)
York, South Carolina, Iowa, Indiana, and Illinois.

[15]The attorneys for the six new plaintiff families are the same attorneys representing the nineteen plaintiff families. It appears that the six plaintiff families initially tried to intervene in the case involving the nineteen plaintiff families. However, they withdrew their motion to intervene. Thereafter, counsel attempted to amend the complaint of the nineteen plaintiff families in order to add the six plaintiff families, but the trial court denied the motion to amend and directed the six plaintiff families to file a separate complaint.

[16]The author of this opinion entered the referral order.

[17]The Respondents did not seek to remove the six plaintiff families that filed
(continued...)

5

The Respondents argued that the plaintiff family from New York was fraudulently joined. Therefore, complete diversity existed with the remaining eighteen plaintiff families. The federal district court denied the motion to remove on the grounds that "partial removal of a consolidated state civil action is improper." *J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:13-33048, 2014 WL 495455, at *5 (S.D. W. Va. Feb. 5, 2014).

After the two cases were referred to the Panel, a status conference was held on March 4, 2014. During the conference, the six Panel members introduced themselves and provided some commentary on the history of mass litigation in the State. The Panel also informed the parties that it interpreted Rule 3(a) to mean that the two complaints filed were actually twenty-five separate civil actions. The Panel later restated its interpretation of Rule 3(a) in an order entered on March 11, 2014. The Petitioners filed the instant petition for a writ of prohibition to prevent enforcement of that order separating the litigation into twenty-five cases.

## II.

## STANDARD OF REVIEW

In this proceeding, the Petitioners seek a writ of prohibition to preclude

_____

[17](...continued)
the second action.

enforcement of an order by the Panel that interpreted Rule 3(a) as essentially nullifying joinder of unrelated plaintiffs in a single complaint. Insofar as it is an extraordinary remedy, "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). In cases where a lower court is alleged to have exceeded its authority, we apply the following standard of review:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

This proceeding also will require this Court to interpret our Rules of Civil Procedure. In that regard, we have held that "[a]n interpretation of the West Virginia Rules

7

of Civil Procedure presents a question of law subject to a *de novo* review." Syl. pt. 4, *Keesecker v. Bird*, 200 W. Va. 667, 490 S.E.2d 754 (1997).

With the foregoing standards as our foundation, we now consider the merits of the Petitioners' request for a writ of prohibition.

## III.

## DISCUSSION

In this proceeding, we have been called upon to determine whether the Panel was correct in *sua sponte* deciding that, under Rule 3(a), the two cases that were referred to it by the Chief Justice had to be litigated substantively as twenty-five separate cases. Resolution of this issue involves three considerations: (1) the requirements for joining multiple plaintiffs in one complaint under Rule 20(a); (2) the impact of Rule 3(a) on joinder of multiple plaintiffs in one complaint; and (3) the authority of the Panel to vacate an administrative order issued by the Chief Justice of this Court. We will address each issue separately.

### A.  *The Requirements for Joining Multiple Plaintiffs in One Complaint under Rule 20(a)*

Each of the Petitioners that joined in the two complaints filed below did so under Rule 20(a). This rule provides for discretionary joinder of multiple plaintiffs in a

8

single complaint.[18]  "Rule 20(a) sets out a two-pronged test for permissive joinder of plaintiffs[.]"  Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 20(a), at 572 (4th ed. 2012). Specifically, and we so hold, Rule 20(a) of the West Virginia Rules of Civil Procedure provides that "[a]ll persons may join in one action as plaintiffs if they assert any right to relief . . . [1] arising out of the same transaction [or] occurrence . . . and [2] if any question of law or fact common to all these persons will arise in the action."[19]  Under Rule 20(a),

---

[18]The issue of mandatory joinder of parties in a complaint is governed by Rule 19 of the West Virginia Rules of Civil Procedure.  *See* Franklin D. Cleckley, Robin Jean Davis, and Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 19(a), at 559 (4th ed. 2012) ("If Rule 19(a) analysis determines the person should join as a plaintiff, but he/she refuses to do so, the person may be made . . . an involuntary plaintiff.").  *See also Calgon Corp. v. Nalco Chem. Co.*, 726 F. Supp. 983, 990 (D. Del. 1989) ("We will also give Calgon leave to file a Rule 19 motion to join Kurita as an involuntary plaintiff within the 30 days if Calgon should determine that Kurita will not enter a voluntary appearance."). Insofar as the instant matter concerns discretionary joinder, we will limit our analysis to Rule 20(a).

[19]Rule 20(a) provides in full as follows:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded.

(continued...)

9

"[j]oinder is proper only if both of these requirements are satisfied." *Smith v. Planned Parenthood of St. Louis Region*, 225 F.R.D. 233, 243 (E.D. Mo. 2004).

The purpose of Rule 20(a)'s "permissive joinder is the promotion of judicial economy by preventing both the duplication of effort and the uncertainty embodied in piecemeal litigation." *Morris v. Crown Equip. Corp.*, 219 W. Va. 347, 356 n.8, 633 S.E.2d 292, 301 n.8 (2006). Moreover, "[j]oinder under Rule 20 is wholly procedural in nature and does not alter the substantive rights of the parties." Cleckley, Davis, and Palmer, *Litigation Handbook*, § 20, at 570 (footnote omitted).

The two-pronged test under Rule 20(a) also is contained in Rule 20(a) of the Federal Rules of Civil Procedure.[20] The decisions of this Court have indicated that, "[t]o aid

---

[19](...continued)
Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

[20]Federal Rule of Civil Procedure 20(a) provides, in relevant part:

(a) Persons Who May Join or Be Joined.

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(continued...)

10

in defining the meaning and scope of this state's individual civil rules of procedure, this Court often gives substantial weight to federal cases interpreting virtually identical federal rules." *State ex rel. Erie Ins. Prop. & Cas. Co. v. Mazzone*, 220 W. Va. 525, 533 n.6, 648 S.E.2d 31, 39 n.6 (2007). In that regard, we find that the decision in *In re Prempro Products Liability Litigation*, 591 F.3d 613 (8th Cir. 2010), helps illustrate the application of Rule 20(a) in the context of multiple plaintiffs suing several drug manufacturers. The decision in *Prempro* involved three lawsuits filed in a Minnesota state court. One complaint was filed by fifty-seven women, another was brought by the representatives of six deceased women and the third complaint was filed by sixty women. All three complaints alleged that the women developed breast cancer from their use of the defendants' medications.[21] The defendants removed all three cases to federal district court. The federal district court found that some of the plaintiffs were fraudulently joined to defeat federal diversity jurisdiction, and that the plaintiffs failed to satisfy the joinder requirements under Rule 20(a). The Eighth Circuit Court of Appeals disagreed with the district court on both issues and ordered the cases be remanded to the Minnesota state court. With respect to the Rule 20(a) issue, the Eighth Circuit reasoned as follows:

> After considering the Rule 20 joinder standards, we conclude that the manufacturers have not met their burden of

---

[20](...continued)
(B) any question of law or fact common to all plaintiffs will arise in the action.

[21]The Respondent Pfizer also was one of the defendants in all three cases.

establishing that plaintiffs' claims are egregiously misjoined. Plaintiffs' claims arise from a series of transactions between HRT pharmaceutical manufacturers and individuals that have used HRT drugs. Plaintiffs allege the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs. Plaintiffs contend their claims are logically related because they each developed breast cancer as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs. Some of the plaintiffs allege to have taken several HRT drugs made by different manufacturers.

Furthermore, given the nature of the plaintiffs' claims, this litigation is likely to contain common questions of law and fact. One such common question might be the causal link between HRT drugs and breast cancer. Causation for all of the plaintiffs' claims will likely focus on the 2002 WHI study suggesting a link between HRT drugs and breast cancer and whether the manufacturers knew of the dangers of HRT drugs before the publication of that study.

*Prempro*, 591 F.3d at 623 (internal citation omitted). We find *Prempro* instructive of the resolution of the Rule 20(a) joinder issue in this case.

In the instant proceeding, the Petitioners contend that they satisfied both requirements of Rule 20(a) in joining nineteen plaintiff families in the first complaint and six plaintiff families in the second complaint. We agree.

The same transaction or occurrence prong of Rule 20(a) means all logically related events. This does not mean that all events must be identical. *See Mosley v. General*

12

*Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("Absolute identity of all events is unnecessary."). "[T]he logical relationship test is satisfied if there is a substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant[.]" *Klamath Irrigation Dist. v. United States*, 113 Fed. Cl. 688, 707 (2013) (internal quotations and citation omitted). In other words, individual claims of the plaintiffs are deemed to have met the same transaction or occurrence requirement "where the defendants' alleged infringing acts, which give rise to the individual claims of infringement, . . . share an aggregate of operative facts." *In re Rivera Lugo*, 503 B.R. 13, 17 (Bkrtcy. D. P.R. 2013) (internal quotations and citations omitted). In the final analysis, multiple persons may join in one action as plaintiffs if "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit." *Martin v. Bank of Am., N.A.*, No. 13 Civ. 02350 (ILG) (SMG), 2014 WL 977653, at *2 (E.D.N.Y. Mar. 12, 2014) (internal quotations and citation omitted).

In this proceeding, both complaints allege that the Respondents designed, manufactured, and promoted the drug Zoloft. The Respondents in this proceeding are companies that essentially constitute a single manufacturer. The complaints allege that each plaintiff mother ingested Zoloft while pregnant, in a manner and dosage recommended by the Respondents and as prescribed by the plaintiff mothers' doctors. It is also contended that each plaintiff child allegedly suffered birth defects as a result of the drug. Both complaints

13

allege that the Respondents knew or should have known of risks associated with taking the drug during pregnancy. The complaints allege that the Respondents failed to adequately disclose the risks of birth defects to the plaintiff mothers and the medical community. The Petitioners contend in the complaints that the Respondents actively concealed and suppressed those dangers. The complaints allege that the plaintiff mothers' treating physicians would not have prescribed Zoloft had adequate warnings and information about its risks appeared on the drug label. We find that these allegations satisfy the first requirement of Rule 20(a). The claims alleged in the complaints are logically related and arise from the same transactions or occurrences, *i.e.*, the production, distribution, and promotion of Zoloft.[22]

The second part of the joinder test under Rule 20(a) requires a showing of commonality. Courts have held that commonality under the rule is not a difficult test to satisfy. *See Bridgeport Music, Inc . v. 11C Music*, 202 F.R.D. 229, 231 (M.D. Tenn. 2001) ("[T]he common question test[ ] is usually easy to satisfy." (citation omitted)). Rule 20(a) requires only a single common question be shown, not multiple common questions. *See Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 233 F.R.D. 615, 617 (D. Kan. 2006)

---

[22]In the attempted removal to federal court involving the eighteen plaintiff families, the district court judge also found that the Petitioners satisfied the same transaction or occurrence prong of federal Rule 20(a). *See J.C. ex rel. Cook v. Pfizer, Inc.*, 2012 WL 4442518, at *5 ("Plaintiffs argue that the claims in the complaint satisfy the same transaction or occurrence requirements of Rule 20 because the claims all arise 'out of the design and mass production of Zoloft and its distribution without adequate labeling of known risks and warning about the drug's inherent dangers.' The Court agrees.").

14

("Some, not all, questions of law or fact must be common."). The common question of fact or law "need not be the most important or predominant issue in the litigation." *Nguyen v. CTS Elecs. Mfg. Solutions Inc.*, No. 13-CV-03679-LHK, 2014 WL 46553, at *4 (N.D. Cal. Jan. 6, 2014). The Petitioners' claims also satisfy the second requirement of Rule 20(a). A few of the questions of fact common to all Petitioners include the design of Zoloft, the Respondents' knowledge of the drug's safety, and their representations about its safety.[23]

In sum, the allegations set out in the two complaints are sufficient to permit joinder under Rule 20(a).[24]

### B. The Impact of Rule 3(a) on Joinder of Multiple Plaintiffs in One Complaint

---

[23]In the attempted removal to federal court involving the eighteen plaintiff families, the district court judge also found that the Petitioners satisfied the common question of fact or law prong of federal Rule 20(a). *See J.C. ex rel. Cook v. Pfizer, Inc.*, 2012 WL 4442518, at *6 ("Plaintiffs' claims also satisfy the second requirement of Rule 20(a)—that any question of law or fact common to all plaintiffs will arise in this action.").

[24]Our determination that the allegations in both complaints satisfy the joinder requirements under Rule 20(a) is consistent with findings by other courts in cases involving the drug Zoloft. *See T.F. ex rel. Foster v. Pfizer, Inc.*, No. 4:12CV1221CDP, 2012 WL 3000229, at *2 (E.D. Mo. July 23, 2012) ("Plaintiffs in this case have filed suit against defendants for injuries caused by the same drug [Zoloft] and arising out of the same development, marketing and sales practices for that drug, and common issues of law and fact are likely to arise in the litigation."); *In re: Zoloft (Sertraline Hydrochloride) Prods. Liab. Litig.*, 856 F. Supp. 2d 1347, 1348 (J.P.M.L. 2012) ("On the basis of the papers filed and the hearing session held, we find that these 57 actions involve common questions of fact[.] These actions share factual questions arising out of allegations that Zoloft causes birth defects in children whose mothers ingest the drug while pregnant.").

Although the two complaints filed in this matter set out allegations that satisfied the requirements for permissive joinder under Rule 20(a), the Panel determined that Rule 3(a) required the two complaints to be treated substantively as twenty-five individual causes of action. The Panel has pointed out that it proposed an amendment to Rule 3(a) in 2008,[25] which incorporated language that required unrelated plaintiffs pay a separate filing fee and be docketed with a separate civil action number. The Panel has indicated that it proposed the amendment for substantive purposes, not for administrative fee purposes. We do not question what the Panel may have intended in proposing the amendment to Rule 3(a) in 2008. However, this Court's intent in adopting the amendment to Rule 3(a) predates 2008, and was, in fact, articulated in *Cable v. Hatfield*, 202 W. Va. 638, 505 S.E.2d 701 (1998). Consequently, before we examine Rule 3(a) and the Panel's interpretation thereof, we must look at the precursor to Rule 3(a) that was created in *Cable*.

**1. Joining multiple plaintiffs in one complaint under *Cable*.** The decision in *Cable v. Hatfield* came to this Court as an appeal by plaintiffs from a circuit court order that denied their petition for a writ of mandamus. The plaintiffs in *Cable* attempted to have a complaint filed that named sixteen persons as plaintiffs, but the circuit clerk refused to file

---

[25]The Panel also proposed amendments to several other rules, and a recommendation for the adoption of a new rule under the West Virginia Trial Court Rules.

16

the complaint.[26] The clerk determined that, under a local court rule, multiple plaintiffs could not be joined in a single complaint; therefore, each plaintiff had to file a separate complaint and a separate filing fee.[27] The plaintiffs filed a petition for a writ of mandamus with the circuit court seeking to compel the clerk to file the complaint. The circuit court denied relief, and the plaintiffs appealed.

At the outset in *Cable*, this Court recognized that the issue of the assessment of a fee for filing a civil complaint was governed by statute. *See* W. Va. Code § 59-1-11 (2012) (Repl. Vol. 2012). *Cable* made clear that, under that statute, a clerk has a duty to collect a filing fee, in the amount set out under the statute, prior to allowing a complaint to be filed. For purposes of imposing the filing fee, *Cable* concluded that the "statute makes no distinction regarding the number of plaintiffs joining a particular suit." *Cable*, 202 W. Va. at 644, 505 S.E.2d at 707. *Cable* also made the following observations regarding naming multiple plaintiffs in a single complaint:

> Our rules of civil procedure permit multiple plaintiffs to join in a single action, under the appropriate circumstances. Increasingly, numerous parties will join in an action as authorized by Rule 20. The mass litigation that can result imposes *a significant burden, financial and otherwise, on circuit clerks' offices*. However, the West Virginia Rules of Civil Procedure are silent with regard to the filing fee to be charged

---

[26]The complaint was mailed to the clerk's office with a single filing fee.

[27]The clerk also refused to file the complaint for another reason that is not relevant in this case.

17

when multiple parties choose to join in one action.

*Cable*, 202 W. Va. at 644-45, 505 S.E.2d at 707-08 (citation omitted) (emphasis added).

To relieve the "significant" financial burden imposed on circuit clerks by a complaint naming multiple plaintiffs, *Cable* noted that circuit courts had the administrative authority to impose additional fees when multiple plaintiffs are joined in a single complaint.

> Courts have inherent authority to require necessary resources, such as sufficient funds for operating expenses, work space, parking space, supplies, and other material items. In order for a court to invoke use of its inherent power to require resources, the court must demonstrate that such resources are reasonably necessary for the performance of its responsibilities in the administration of justice. Although courts must be cautious not to reach beyond the power of the judicial branch, it is crucial for the judiciary to be able to invoke such power as is reasonably necessary to maintain itself as an independent and equal branch of our government. Syl. pt. 3, *State ex rel. Lambert v. Stephens*, 200 W. Va. 802, 490 S.E.2d 891 (1997).

*Cable*, 202 W. Va. at 645, 505 S.E.2d at 708. Recognizing the authority of circuit courts to require resources for the proper administration of the courts, *Cable* made the following dispositive holding:

> A circuit judge or chief judge of a circuit with more than one judge, shall have the authority to enter an administrative order governing when separate filing fees are required and may require additional filing fees in multiple plaintiff cases *until such time as a statewide rule governing filing fees in multiple plaintiff cases is promulgated*.

Syl. pt. 3*, Cable*, 202 W. Va. 638, 505 S.E.2d 701 (emphasis added). The decision in *Cable*

18

went on to set out the procedure that should be followed when multiple plaintiffs are joined in a complaint:

> When a circuit court clerk receives a complaint, which lists multiple plaintiffs, complies with the West Virginia Rules of Civil Procedure and is accompanied by the . . . filing fee mandated by W. Va. Code § 59-1-11(a) . . ., the clerk must file the complaint. Once such a complaint has been filed, the circuit judge to whom the case has been assigned must determine whether the requirements . . . are met such that additional filing fees should be assessed.

Syl. pt. 4, in part, *Cable*, 202 W. Va. 638, 505 S.E.2d 710.[28]

In sum, the critical factual setting presented to this Court in *Cable* involved a local circuit court rule that prohibited multiple parties from being joined in one complaint. Under the local rule each plaintiff had to file a separate complaint and pay a separate filing

---

[28]The decision in *Cable* also made reference to the newly established Panel and its potential role in litigation involving multiple plaintiffs joined in a single complaint:

> This Court recently established a Mass Litigation Panel to, *inter alia*, "develop and implement case management and trial methodologies for mass litigation." *See* Rule XIX(b)(1), W. Va. T.C.R. for Trial Courts of Record. This panel became fully operational on July 1, 1998. Due to its recent commencement, the panel obviously has not yet had the opportunity to address issues such as the one presently before us. *In the absence of the adoption of a relevant rule proposed by the mass litigation panel, our decision must be guided by W. Va. Code § 59-1-11(a).*

*Cable*, 202 W. Va. at 646, 505 S.E.2d at 709 (emphasis added).

19

fee. Based upon the application of Rule 20(a), this Court rejected the local court rule that barred joinder of multiple plaintiffs in a single complaint. The decision in *Cable* expressly noted that Rule 20(a) authorized such joinder. However, we were keenly sensitive to the "significant burden, financial and otherwise, on circuit clerks' offices" as a result of allowing multiple plaintiffs to be joined in one complaint. To alleviate this financial burden, the Court in *Cable* authorized circuit courts to impose additional filing fees on complaints filed by multiple plaintiffs, pending this Court's adoption of a statewide rule addressing the issue.

The discretion *Cable* gave to trial courts to require additional filing fees, when multiple plaintiffs joined in a single complaint, was addressed by a federal court in *Grennell v. Western Southern Life Insurance Co.*, 298 F. Supp. 2d 390 (S.D. W. Va. 2004). The decision in *Grennell* started out as a civil action filed by 2,286 plaintiffs in the Circuit Court of Mason County, West Virginia. The plaintiffs sued an insurance company and seven individuals who were allegedly agents of the insurer. The single complaint filed by the plaintiffs alleged that the defendants committed various forms of fraud against them in the sale of certain life insurance policies. Although only one complaint was filed, the clerk of the court, acting pursuant to an administrative order of the circuit court, required each "family unit plaintiff" to pay a separate filing fee and be assigned a separate case number. Based upon the definition given to "family unit plaintiff," 1,891 case numbers were assigned, and 1,891 filing fees were charged. Even though the clerk was required to assign multiple

20

case numbers and charge multiple filing fees, the plaintiffs were not required to file multiple complaints. "According to the Mason County Circuit Court Clerk, multiple case numbers were assigned 'for purposes of assessing and tracking the filing fees . . . and for tracking documents that may apply to individual Plaintiffs' [sic].'" *Grennell*, 298 F. Supp. 2d at 392.

The defendants in *Grennell* removed the claims of 1,317 of the plaintiffs to federal court. The defendants argued that they did not have to remove all the plaintiffs to federal court because the plaintiffs were never properly joined in circuit court, and, therefore, the plaintiffs' claims constituted separate causes of action. Alternatively, the defendants contended that if the claims constituted one action, some of the plaintiffs were fraudulently joined to defeat federal jurisdiction. The plaintiffs argued that the claims should be remanded to circuit court because only one action had been filed. The federal district court agreed with the plaintiffs, in part, in finding that only one civil action was filed even though separate filing fees were charged and separate docket numbers were assigned. The decision addressed the matter as follows:

> Plaintiffs urge this Court to examine the status of this litigation as it existed in Mason County Circuit Court and to determine that despite certain administrative actions taken by that court, there existed only one case. . . . According to Plaintiffs, if the Mason County litigation was truly one case, then removal was improper. . . . If as Defendants posit and as explained more fully below Plaintiffs were fraudulently joined in state court, then a finding that the litigation was only a single case will not defeat the diversity jurisdiction of this Court. . . .

21

. . . .

> Defendants argue that "there has been no joinder or consolidation here." The Court is not swayed by this assertion. As noted, the Mason County plaintiffs filed only one complaint to initiate litigation that included over 2,200 individuals. Defendants are correct that the cases were never formally consolidated. Therefore, if Plaintiffs were not joined in one action, the Circuit Court would have required them to file a separate complaint on behalf of each plaintiff. Defendants also point out that Plaintiffs were required to pay multiple filing fees. As discussed, however, the Mason County Circuit Court Clerk characterizes these as "supplemental filing fees." This description of the fees supports Plaintiffs' argument that the litigation involved something other than 1,891 separate original actions. . . . The Court therefore finds that Defendants have not met their burden of demonstrating that the Mason County Circuit Court litigation involved non-joined plaintiffs.[29]

*Grennell*, 298 F. Supp. 2d at 393-95.

In the final analysis, *Grennell* supports the proposition that, under the authority of *Cable*, multiple plaintiffs can join in a single complaint, even though they are charged separate filing fees and assigned separate docket numbers.

**2. Joining multiple plaintiffs in one complaint under Rule 3(a).** As previously mentioned, the Panel *sua sponte* determined that the two cases referred to it by the Chief Justice would be treated substantively as twenty-five separate civil actions. The

---

[29]The *Grennell* Court went on to find that the plaintiffs were fraudulently joined to defeat federal jurisdiction.

Panel's order addressed the matter as follows:

> [T]he Panel ORDERS the 25 civil actions filed in the Zoloft Litigation to be treated as separate civil actions. The Panel notes . . . that Rule 3(a) is, on its face, a substantive rule of civil procedure, not an "administrative rule."

We respectfully disagree with the Panel's interpretation of Rule 3(a).

To begin, the relevant language in Rule 3(a) that was relied upon by the Panel was incorporated into the rule in 2008. The text of Rule 3(a) provides as follows:

> (a) Complaint. A civil action is commenced by filing a complaint with the court. *For a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court.*

(Emphasis added). The italicized language was added in 2008. The Panel's order states that it proposed this amendment to the Court with the intent that "[e]ach separately assigned civil action number constitutes a separate civil action for any and all substantive purposes, as opposed merely for administrative purposes, such as fee collection." The Respondents have argued that "[t]he Panel's unique role as the author of the rule and the judicial tribunal charged with applying it to mass-tort scenarios makes the Panel especially well-suited to interpret the rule's meaning and purpose." Both the Panel and the Respondents overlook the fact that the Panel's purported intent in recommending the adoption of Rule 3(a) is inconsistent with *Cable* and Rule 20(a).

23

Simply put, this Court did not adopt the amendment to Rule 3(a) for the purpose articulated by the Panel. This Court's intent behind Rule 3(a) was expressly set out in *Cable*. As pointed out previously, the decision in *Cable* rejected a local circuit court rule that barred joinder of plaintiffs in a single complaint. *Cable* approved of such joinder and authorized circuit courts to assess separate filing fees in those circumstances. The Panel's interpretation of Rule 3(a) resurrects the local circuit court rule that this Court rejected in *Cable* and, in effect, implicitly overrules *Cable*.

It is obvious from the wording of Rule 3(a) that multiple plaintiffs may join in a single complaint. The relevant language in the rule states: "[f]or a complaint naming more than one individual plaintiff[.]" This language clearly implies that a complaint may name multiple persons as plaintiffs in a single complaint. If this Court intended the result argued by the Panel, we could have achieved that result by fashioning an amendment that read: "No complaint shall name more than one individual plaintiff, unless they are related by marriage, a derivative or fiduciary relationship." Rule 3(a) was not drafted to achieve this result. All that Rule 3(a) was intended to do was to attach a separate filing fee and record keeping docket number for multiple persons, not related by marriage, a derivative or fiduciary relationship, who are joined as plaintiffs in a complaint.

In its brief filed in this matter, the Panel also argued that the definition of mass

24

litigation provided by Rule 26.04(a)(2) supports its decision to treat the two cases as twenty-five separate actions. The Panel points out that Rule 26.04(a)(2) has defined mass litigation to mean "[t]wo (2) or more *civil actions* pending in one or more circuit courts . . . involving common questions of law or fact in 'personal injury mass torts' implicating numerous claimants in connection with widely available or mass-marketed products and their manufacture, design, use, implantation, ingestion, or exposure[.]"[30] (Emphasis added). The

---

[30]The full definition of "Mass Litigation" is provided under Rule 26.04(a) as follows:

> "Mass Litigation" Two (2) or more civil actions pending in one or more circuit courts: (1) involving common questions of law or fact in mass accidents or single catastrophic events in which a number of people are injured; or (2) involving common questions of law or fact in "personal injury mass torts" implicating numerous claimants in connection with widely available or mass-marketed products and their manufacture, design, use, implantation, ingestion, or exposure; or (3) involving common questions of law or fact in "property damage mass torts" implicating numerous claimants in connection with claims for replacement or repair of allegedly defective products, including those in which claimants seek compensation for the failure of the product to perform as intended with resulting damage to the product itself or other property, with or without personal injury overtones; or (4) involving common questions of law or fact in "economic loss" cases implicating numerous claimants asserting defect claims similar to those in property damage circumstances which are in the nature of consumer fraud or warranty actions on a grand scale including allegations of the existence of a defect without actual product failure or injury; or (5) involving common questions of law or fact regarding

(continued...)

25

Panel contends that, under the rule, the phrase "civil actions" has a different meaning than the term "complaint." According to the Panel, "Mass Litigation is not determined by the number of complaints filed. It is determined by the number of civil actions pending in one or more circuit courts." The Panel failed to cite any authority to support its contention that, in essence, one complaint can be composed of twenty-five civil actions. We are not persuaded by the Panel's analysis.

"[A] complaint is synonymous with . . . a civil action." *Cooley v. Zewe*, No. 11-99 Erie, 2012 WL 6677885, at *3 (W.D. Pa. Dec. 21, 2012) (internal quotations and citation omitted). Moreover, "[a] 'civil action' has been defined as an [a]ction brought to enforce, redress, or protect private rights." *Estate of Johnson v. Randall Smith, Inc.*, 989 N.E.2d 35, 39 (Ohio 2013). *See Derderian v. Essex Ins. Co.*, 44 A.3d 122, 128 (R.I. 2012) ("[A] 'civil action' is defined as [a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation."). A civil action brought to redress an injury is embodied in the complaint. If there is no complaint, there is no civil action. In other words, the filing of a complaint, regardless of how many plaintiffs are joined, is but one civil action. While it is true there may be many theories set out in a complaint, this does not alter the fact

[30](...continued)
> harm or injury allegedly caused to numerous claimants
> by multiple defendants as a result of alleged nuisances or
> similar property damage causes of action.

26

that only one civil action is commenced through the filing of one complaint. The number of complaints filed determines the number of civil actions filed. Consequently, we do not accept the Panel's distinction between a civil action and a complaint.

Further, if this Court had sought to achieve the Panel's interpretation of Rule 3(a), we necessarily would have had to abolish Rule 20(a). As previously discussed in this opinion, Rule 20(a) expressly permits multiple persons to "join in one action as plaintiffs" under specified conditions. The Respondents contend that the Panel's interpretation of Rule 3(a) works in harmony with Rule 20(a) because "claims of unrelated plaintiffs must begin as separate cases, and a court can then consolidate those cases if the standard for joinder is satisfied." To achieve the result argued by the Respondents would require ignoring the clear language in Rule 3(a) that states that a complaint may "nam[e] more than one individual plaintiff[.]" This language does not require unrelated plaintiffs to file individual complaints and thereafter seek joinder under Rule 20(a). It is black letter law that when plaintiffs are initially joined in a complaint, there is no requirement that a separate motion for joinder be made under Rule 20(a). *See Grennell v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d at 395 ("Defendants also note that no motion for joinder was made in the Circuit Court action. Under both West Virginia and federal procedural rules, however, no such motion is required

27

where, as in this case, multiple parties are joined at the time of the filing of a complaint.").[31]

In view of the foregoing discussion, we now make clear and hold that Rule 3(a) of the West Virginia Rules of Civil Procedure provides that "[f]or a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court." Rule 3(a) is an administrative fee and record keeping provision. The use of multiple case docket numbers is for the purpose of assessing and tracking filing fees, and for tracking documents that may apply to individual plaintiffs. Rule 3(a) does not provide authority for severing a complaint substantively into two or more separate civil cases.

---

[31]Under the proper circumstances, severance of parties properly joined under Rule 20(a) may be achieved through Rule 21 of the West Virginia Rules of Civil Procedure. Rule 21 provides, in relevant part, that "[a]ny claim against a party may be severed and proceeded with separately." It has been recognized that "Rule 21 may . . . be invoked to sever the claims of parties otherwise permissively joined pursuant to Rule 20(a) for convenience, to avoid prejudice, or to promote the expeditious resolution of the litigation." *Dantzler-Hoggard v. Graystone Acad. Charter Sch.*, No. 12-0536, 2012 WL 2054779, at *10 (E.D. Pa. June 6, 2012) (internal quotations and citation omitted). *See Robinson v. Dart*, No. 13C1502, 2014 WL 222711, at *5 (N.D. Ill. Jan. 21, 2014) ("[P]laintiffs are properly joined under Rule 20(a), the court may still sever a party pursuant to Rule 21[.]"); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2013 WL 2631333, at *2 (S.D. Cal. June 11, 2013) ("A court may sever a trial under Rule 21 even if the parties are properly joined under Rule 20(a)."); *Gsouri v. Farwest Steel Corp.*, No. C10-5769BHS, 2011 WL 1827343, at *2 (W.D. Wash. May 12, 2011) ("A court may, in its discretion, sever a trial under Rule 21, even if the parties are properly joined under Rule 20(a).").

The holding reached in this case also has been reached by two federal district courts. In the previously mentioned federal case involving the eighteen plaintiff families, the Respondents herein argued "that because the state court separated Plaintiffs' claims into distinct case numbers, and charged separate filing fees for each case, the claims are not properly joined." *J.C. ex rel. Cook v. Pfizer, Inc*., 2012 WL 4442518, at *2. The district judge rejected this argument as follows:

> Defendants offer no authority . . . for the proposition that Rule 3(a) was meant to have the rather severe substantive effect of prohibiting all unrelated persons from proceeding with a mass claim in West Virginia state courts. Instead, it seems more likely that the changes to Rule 3(a) were intended to alter the administration of mass claims by the state courts. Plaintiffs provide the affidavit of the Clerk of the Wayne County Circuit Court . . . stating that Plaintiffs in this matter were separated by the state court as directed by Rule 3(a), but that they were not required to file separate complaints, were not considered separate cases, and were all assigned to the same judge. A single affidavit may not be dispositive on the question of how to interpret a state rule of civil procedure, but in this case, it illustrates the principle evident from the changes to Rule 3(a). . . : administrative separation of claims in state court does not determine the propriety of joinder in federal court. Defendants have not met their burden of demonstrating that Plaintiffs' claims were not properly joined because of case processing practices in Wayne County Circuit Court.

*J.C. ex rel. Cook v. Pfizer, Inc*., 2012 WL 4442518, at *3.

In the second federal case, *Almond v. Pfizer Inc*., No. 1:13-CV-25168, 2013 WL 6729438 (S.D. W. Va. Dec. 19, 2013), the district court addressed the meaning of our

Rule 3(a). In *Almond*, over thirty-six plaintiffs filed a single complaint in the McDowell

County Circuit Court against Pfizer, a Respondent in this case. The plaintiffs alleged that

they developed diabetes as a result of taking the defendant's drug called Lipitor. The

defendant removed the claims of thirty-six of the plaintiffs to a federal district court. One

of the arguments made by the defendant in the federal litigation was that, under our Rule

3(a), the plaintiffs had to be treated substantively as having filed thirty-six separate

complaints. The plaintiffs argued that only one complaint was filed in state court and that

the case should be remanded back to state court. The district judge, relying in part on the

decision in *J.C. ex rel. Cook v. Pfizer, Inc.*, agreed with the plaintiffs as follows:

> In considering this precise issue in a case with the same defendant, represented by the same counsel, setting forth the same arguments, Judge Chambers interpreted Rule 3(a) as "intended to alter the administration of mass claims by the state courts" and found that it was not "meant to have the rather severe substantive effect of prohibiting all unrelated persons from proceeding with a mass claim in West Virginia state courts." *J.C. ex rel. Cook v. Pfizer, Inc.*, 2012 WL 4442518, 3 (S.D.W. Va.2012) (Chambers, J.).

> . . . .

> The Plaintiffs in the present action properly joined their claims in a single case, regardless of the administrative filing requirements of the state court. This Court finds Judge Chambers' reasoning persuasive with respect to the application of West Virginia Rule of Civil Procedure 3(a), and further finds that the rule does not mandate that federal courts treat all plaintiffs in a joined case, whether under a single civil action number or not, independently for the purposes of remand analysis. It is undisputed that four of the Plaintiffs named in the complaint and the amended complaint are New York citizens,

and that the Defendant has its principal place of business in New York and is, therefore, considered a New York citizen for federal diversity jurisdiction purposes. As such, the four New York plaintiffs, parties to the single complaint, defeat diversity jurisdiction.

*Almond v. Pfizer Inc.*, 2013 WL 6729438, at *3-4.[32]

## C. The Authority of the Panel to Vacate an Administrative Order Issued by the Chief Justice

---

[32]Some federal courts similarly require separate filing fees for multiple prisoners that are joined in a single complaint. *See Schuenke v. Wisconsin Dep't. of Corrs.*, No. 13-CV-865-bbc, 2014 WL 905529, at *1 (W.D. Wis. Mar. 7, 2014) ("Although plaintiffs have joined their claims in one complaint, each is bringing an action subject to the 1996 Prison Litigation Reform Act and each must pay the full $350 fee for filing the action."); *Ross v. Hardy*, No. 12 C1069, 2013 WL 951164, at *1 (N.D. Ill. Mar. 12, 2013) ("Although Fed. R. Civ. P. 20(a) permits co-plaintiffs to bring a jointly filed complaint, the Prison Litigation Reform Act holds each plaintiff responsible for payment of a full filing fee, which is $350. Accordingly, each inmate who seeks to be a part of this suit must . . . prepay the $350 filing fee."). Nevertheless, federal courts do not treat a complaint filed by multiple prisoners as separate complaints for each prisoner merely because each prisoner is assessed a filing fee. Our research also found that the courts of Louisiana have the authority to assess separate filing fees against each plaintiff named in a complaint. *See Adams v. Airco Welding Prods. Co.*, 739 So. 2d 375, 377 (La. Ct. App. 1999) ("[T]he fees schedule of this court requires each plaintiff to pay the full filing fees in petitions of multiple plaintiffs unless the lawsuit arises from one single incident, such as an automobile accident."). Moreover, it appears that some state courts in Mississippi have required multiple plaintiffs joined in a single complaint pay separate filing fees. However, the Mississippi Supreme Court found that no statutory authority allowed for the imposition of separate filing fees. *See Hinds Cnty. Bd. of Supervisors v. Abnie*, 934 So. 2d 996, 999 (Miss. 2006) ("As succinctly stated by this Court's Order of September 4, 2003, the Legislature established the statutory fees allowed to be charged by clerks, and 'no more.' In the matter sub judice, the Circuit Clerk was not at liberty to assess and collect administrative costs and separate filing fees for each plaintiff, as it was contrary to state law, specifically Miss. Code Ann. Section 25-7-1 and Section 25-7-13. Plaintiffs were improperly and impermissibly required to pay filing fees and administrative costs in excess of the statutorily authorized amount.").

Although we have determined that the Panel incorrectly interpreted Rule 3(a), we are compelled to address the issue of whether the Panel had the authority to vacate the Chief Justice's order that found that these actions constituted two cases. As a general matter, the Chief Justice of this Court has the constitutional authority to issue administrative orders controlling the courts in this State. *See* W. Va. Const. III, § 3 ("The chief justice shall be the administrative head of all the courts."). *See also* W. Va. Code § 50-1-16 (1982) (Repl. Vol. 2008) ("Rules promulgated by the judge of a circuit court, or the chief judge thereof, pursuant to the provisions of this chapter shall be subordinate and subject to the rules of the Supreme Court of Appeals or the orders of the chief justice thereof."); W. Va. Code § 51-2A-7(b) (2013) (Supp. 2013) "Local [family court] administrative rules are subordinate and subject to the rules of the Supreme Court of Appeals or the orders of the chief justice.").

On December 2, 2013, the Petitioners filed a motion in the circuit court to have the instant two cases referred to the Panel. The procedure for seeking a referral to the Panel is set out under Rule 26.06(a)(3) of the Mass Litigation Rules:

> The motion shall be served on all the parties, including those parties not represented by counsel, all judges in actions which are the subject of the motion, and the Panel's Mass Litigation Manager. Any party shall have twenty (20) days after the motion is filed to file a reply memorandum stating its position and opposition, if any. Any affected judge may file a reply memorandum within twenty (20) days thereafter.

This rule permits any party or affected judge to file a response to the motion.

The motion filed by the Petitioners stated that "[t]his litigation is subject to coordinated case management as mass litigation before the West Virginia Mass Litigation Panel *because it is two Complaints* involving common questions of law and fact[.]" (Emphasis added). The Respondents filed a response to the motion. The response purported to support the referral motion; but, it actually was inconsistent with the motion. The response memorandum addressed two separate issues. First, the response argued that the complaint filed by the original nineteen plaintiff families should not be referred because those plaintiffs were going to be removed to federal court.[33] Second, the response contended that the case involving the remaining six plaintiff families should be referred to the Panel because their complaint was actually six separate cases.

After the motion and response were filed in circuit court, Rule 26.06(c)(1) outlined the next step in the process. That rule provides that the motion for referral and all reply memoranda must be submitted for review to the Chief Justice of this Court. This provision of the rule provides the Chief Justice with two options:

> Upon review of the motion and reply memoranda, the Chief Justice may act directly upon the motion or *may direct the Panel to conduct a hearing and make recommendations concerning coordinated or consolidated proceedings under this rule*.

---

[33]The federal court rejected the Respondents' attempt to have the complaint of the nineteen plaintiff families removed to federal court.

Rule 26.06(c)(1) (emphasis added). This provision gives the Chief Justice discretion to ask the Panel to render a recommendation on the referral motion.[34] This provision is an important limitation on the authority of the Panel. The provision states clearly that if the Chief Justice asks the Panel to review the referral motion, the Panel can make only a recommendation to the Chief Justice. More importantly, it is only at this stage that the Mass Litigation Rules allow the Panel to have direct input into whether cases are proper for litigation before the Panel.[35]

In the instant case, the Chief Justice did not ask the Panel to review the referral motion. On January 14, 2014, the Chief Justice entered an order transferring the two

---

[34]The procedure the Panel must follow is provided by Rule 26.06(c)(2):

> (2) If the Chief Justice directs, a Panel member or members shall hold a hearing to receive evidence and entertain arguments by the parties or any judge, and shall submit findings of fact and a recommendation to the Chief Justice.

[35]*See. e.g.*, *In re Flood Litig.*, 216 W. Va. 534, 540 n.3, 607 S.E.2d 863, 869 n.3 (2004) ("The Chief Justice of this Court originally received a motion . . . to refer to the Mass Litigation Panel certain litigation pending before seven circuit courts. This motion was referred to the Honorable Gary L. Johnson, . . . as a member of the Mass Litigation Panel, for the purpose of conducting a hearing and submission of findings of fact and a recommendation to the Chief Justice regarding the motion to refer. Judge Johnson essentially concluded that the issues raised in the flood litigation cases could be more efficiently and fairly resolved by referral to the Mass Litigation Panel. By order of May 16, 2002, the Chief Justice granted the motion to refer as recommended by Judge Johnson.").

34

consolidated cases to the Panel.[36]  The transfer order stated that "[t]he Chief Justice has determined that such Motion to Refer should be granted and that it is appropriate to transfer *all cases identified in said Motion* to the Mass Litigation Panel." (Emphasis added).  Only two cases were identified in the motion, and therefore, only two cases were transferred. Thus, the Chief Justice rejected the position of the Respondents that the complaint filed by the six plaintiff families should be referred to the Panel as six separate cases and that the remaining nineteen plaintiff families should not be referred to the Panel.

After the Chief Justice entered the order referring the two cases, the Panel *sua sponte* decided that the Chief Justice actually referred twenty-five cases.  This determination, in effect, vacated the Chief Justice's referral order.  The Panel's order stated that in view of its interpretation of Rule 3(a), "any other orders that are inconsistent with the Panel's prior application of Rule 3(a), as plainly written, are VACATED."  There is no provision in the Mass Litigation Rules that gives the Panel the authority to vacate an order by the Chief

---

[36]The authority of the Chief Justice to enter the order is provided by Rule 26.06(c)(3) as follows:

> The Chief Justice, whether acting directly upon the motion or upon the recommendation of the Panel member or members, shall enter an order either granting or denying the motion, or providing modified relief.  The order shall be filed with the Clerk of the Supreme Court of Appeals who shall send a copy of the order to the Panel Chair and to the clerk(s) of the circuit court(s) where the actions are pending for service on all parties.

Justice.

The Respondents contend in a footnote of their brief that Rule 26.05(f) of the Mass Litigation Rules is the authority for the Panel's decision. Rule 26.05(f) states that the Panel can "take such action as is reasonably necessary and incidental to the powers and responsibilities conferred by this rule or by the specific directive of the Chief Justice."[37] Rule

---

[37]Rule 26.05 provides in full as follows:

The Panel shall:

(a) develop and implement case management and trial methodologies to fairly and expeditiously resolve Mass Litigation referred to the Panel by the Chief Justice;

(b) preside in Mass Litigation or proceedings therein referred by the Chief Justice;

(c) request the assignment by the Chief Justice of additional active or senior status circuit court judges to assist the Panel in resolving Mass Litigation or proceedings therein as needed, and provide assistance and guidance to such judges when assigned;

(d) recommend for adoption by the Supreme Court of Appeals rules for conducting the business of the Panel as needed;

(e) report periodically to the Chief Justice concerning the Panel's activities;

(f) take such action as is reasonably necessary and

(continued...)

26.05, in its entirety, allows the Panel to implement procedural devices for efficiently handling cases referred by the Chief Justice. However, we do not find that this provision authorizes the Panel to vacate an order of the Chief Justice.

Moreover, there is no provision in the Mass Litigation Rules that expressly or implicitly gives the Panel discretion to convert two cases referred to it by the Chief Justice into twenty-five separate cases. In fact, the Mass Litigation Rules are careful to expressly limit the ability of the Panel to substantively add more cases. For example, under Rule 26.09(b), "[i]f the initial order of the Chief Justice granting a Motion to Refer to the Mass Litigation Panel does not authorize the Panel to transfer and join with the existing Mass Litigation any subsequently filed actions, the procedure under Rule 26.06 shall be followed." Rule 26.09(b) makes clear that, absent express authorization by the Chief Justice, the Panel

---

[37](...continued)
incidental to the powers and responsibilities conferred by this rule or by the specific directive of the Chief Justice; and

(g) develop and implement plans for central organization, including, but not limited to staffing, record keeping, and other assistance for the management of Mass Litigation, the transfer and storage of Mass Litigation court files to the appropriate circuit, the implementation of appropriate technology, and the adoption of necessary rules and procedures.

cannot add new cases to its litigation.[38]

The Mass Litigation Panel does not have authority to vacate an order of the Chief Justice of the West Virginia Supreme Court of Appeals. Therefore, when an order of the Chief Justice transfers cases to the Panel, the Panel has no authority to separate the cases under Rule 3(a) of the West Virginia Rules of Civil Procedure for the purpose of substantively increasing the number of cases that were transferred.

Although our holding recognizes limitations on the authority of the Panel, we wish to make clear that we support the Panel's need to have some discretion in processing the numerous issues that necessarily flow from mass litigation cases. In this regard, we wish to be clear in also recognizing that the Panel has the authority to implement procedural mechanisms to address the numerous individual and collective unique issues that are inherent in mass litigation. *See In re Tobacco Litig.*, 218 W. Va. 301, 303 n.1, 624 S.E.2d 738, 740 n.1 (2005) ("'A creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably swift and efficient disposition of mass liability

---

[38]Another example of the restraint placed on the Panel's authority to alter the number of cases it has involves class actions. Rule 26.10 of the Mass Litigation Rules addresses the procedure to be followed when cases referred to the Panel become the subject of a class action in another proceeding. This rule states that "[i]f any Mass Litigation transferred to the Panel is later certified as a class action by any court pursuant to Rule 23, W. Va. R. Civ. P., the Panel may request the Chief Justice transfer the Mass Litigation from the Panel to the appropriate circuit court."

cases will be approved so long as the plan does not trespass upon the procedural due process rights of the parties.'" (quoting Syl. pt. 3, *State ex rel. Appalachian Power Co. v. MacQueen*, 198 W. Va. 1, 479 S.E.2d 300 (1996). Our Rules of Civil Procedure provide a host of mechanisms for the Panel to use in efficiently processing mass litigation cases. We encourage the Panel to be innovative within the meaning and spirit of our rules.[39]

For example, nothing prevents the Panel from using procedural mechanisms to procedurally divide the plaintiffs and defendants into any number of relevant groups, so long as no substantive division occurs as was done in this case. Moreover, to the extent that some plaintiffs may be subject to dispositive motions based upon such issues as statutes of limitation or summary judgment, the Panel also is free to devise a scheme that permits the defendants to raise those issues and have them addressed separately. In addition to these examples, the Panel also may craft solutions to address other procedural issues that may arise.

Furthermore, a good source for suggestions on how to efficiently handle

---

[39]Some of the concerns raised by the Panel in its brief involve out-of-state litigants filing complaints in this state and naming one West Virginia resident as a plaintiff in order to defeat federal jurisdiction. There are procedural mechanisms for removing improperly or fraudulently joined plaintiffs. *See Grennell*, 298 F.Supp. 2d at 397 ("[M]isjoinder is present, and severance appropriate, when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact."). Rule 3(a) was not created to address this issue.

complex mass litigation issues is the Federal Judicial Center's *Manual for Complex Litigation*, Fourth (2004) ("hereinafter the Manual").[40]  Federal courts "often look to the Manual as a guidepost in crafting procedures that will aid all parties involved in both the progression and adjudication of complex cases[.]" *Dunlavey v. Takeda Pharms. Am., Inc.*, Nos. 6:12-CV-1162, et al., 2012 WL 3715456, at *1  (W.D. La. Aug. 23, 2012).  For example, the Manual suggests courts designate attorneys to act on behalf of other counsel and parties in addition to their own clients.  In fact, the Manual permits the court to appoint well-seasoned, experienced mass litigation lawyers to spearhead the litigation even though they may, or may not, be counsel in the pending litigation.  The Manual has identified four categories of counsel: liaison counsel,[41] lead counsel,[42] trial counsel,[43] and committees of

---

[40] The  Manual  can  be  found  at: http://www.fjc.gov/public/pdf.nsf/lookup/MCL40000.pdf/$file/MCL40000.pdf (last visited May 14, 2014).

[41] The Manual describes the role of "liaison counsel" as follows:

> Liaison counsel.   Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions.  Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts.  Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side, and if their functions are strictly limited to administrative matters, they need not be
>
> (continued...)

40

counsel.[44]  The Manual provides some excellent ideas for handling such issues as discovery

------

[41](...continued)
attorneys.

Manual, § 10.221.

[42]The Manual describes the role of "lead counsel" as follows:

> Lead counsel. Charged with formulating (in consultation with other counsel) and presenting positions on substantive and procedural issues during the litigation. Typically they act for the group–either personally or by coordinating the efforts of others–in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met.

Manual, § 10.221.

[43]The Manual describes the role of "trial counsel" as follows:

> Trial counsel. Serve as principal attorneys at trial for the group and organize and coordinate the work of the other attorneys on the trial team.

Manual, § 10.221.

[44]The Manual describes the role of "committees of counsel" as follows:

> Committees of counsel.  Often called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams. Committees are most commonly needed when group members' interests and positions are sufficiently dissimilar to justify giving them

(continued...)

41

disputes, privilege claims and protective orders, handling documents, discovery of computerized data, depositions, interrogatories, stipulations, and requests for admission.

Finally, to the extent that the Panel was attempting to find a way to efficiently manage the two cases referred by the Chief Justice, it simply was not appropriate to do so by entering a ruling that effectively vacated the Chief Justice's order. A reservoir of information and procedural devices exist to assist the Panel in bringing the two cases to a fair and just resolution. As we have noted, we recognize the Panel's authority to manage cases referred to it and its ability to craft creative solutions to problems it may encounter in its consideration of multiple cases. However, we reiterate that such authority granted to the Panel does not exceed that vested in the Chief Justice of this Court.

## IV.

## CONCLUSION

---

[44](...continued)

representation in decision making. The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately. Committees of counsel can sometimes lead to substantially increased costs, and they should try to avoid unnecessary duplication of efforts and control fees and expenses.

Manual, § 10.221.

In view of the foregoing, we grant the Petitioners' request for a writ of prohibition and prohibit enforcement of the Panel's order of March 11, 2014, that separated the two cases referred by the Chief Justice into twenty-five civil cases.

Writ granted.