IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

**FILED**

**April 10, 2015**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

No. 14-1189

STATE OF WEST VIRGINIA, EX REL. J.C., a minor,
BY AND THROUGH HIS MOTHER AND NEXT FRIEND, MICHELLE C., ET AL.
Plaintiffs Below, Petitioners

v.

THE HONORABLE JAMES P. MAZZONE, lead presiding judge,
ZOLOFT LITIGATION, MASS LITIGATION PANEL, AND PFIZER, INC.,
ROERIG, DIVISION OF PFIZER, INC., AND GREENSTONE, LLC,
FORMERLY KNOWN AS GREENSTONE, LTD,
Defendants Below, Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT DENIED

Submitted: March 11, 2015
Filed: April 10, 2015

Benjamin L. Bailey, Esq.
John W. Barrett, Esq.
Ryan McCune Donovan
Bailey & Glasser LLP
Charleston, West Virginia

Bert Ketchum, Esq.
Green Ketchum Farrell
Bailey & Tweel
Huntington, West Virginia
Counsel for the Petitioners

Michael J. Farrell, Esq.
Erik W. Legg, Esq.
Megan Farrell Woodyard, Esq.
Farrell, White & Legg PLLC
Huntintgton, West Virginia
Counsel for the Respondents

JUSTICE LOUGHRY delivered the opinion of the Court.

JUSTICE KETCHUM, deeming himself disqualified, did not participate in the decision in this case.

SENIOR STATUS JUSTICE MCHUGH sitting by special assignment.

CHIEF JUSTICE WORKMAN and JUSTICE DAVIS dissent and reserve the right to file dissenting opinions.

**SYLLABUS BY THE COURT**

1. "Prohibition will lie to prohibit a judge from exceeding his legitimate powers." Syl. Pt. 2, *State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 239 S.E.2d 660 (1977).

2. "In determining whether to entertain and issue the writ of prohibition . . . this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

LOUGHRY, Justice:

The petitioners[1] seek a writ of prohibition to prevent the Mass Litigation Panel from enforcing its order entered on October 21, 2014, dismissing them on the basis of forum non conveniens from the underlying personal injury litigation, which involves products liability and negligence claims. Following a careful review of the briefs, the arguments of counsel, the record submitted, and the applicable law, we deny the requested writ.

## I. Facts and Procedural Background

This litigation commenced on July 11, 2012, when a complaint alleging products liability and negligence claims was filed in the Circuit Court of Wayne County by nineteen unrelated mothers, who brought claims on behalf of their respective minor children. The mothers alleged that their ingestion of the drug sertraline hydrochloride, also known by its brand name Zoloft,[2] during their pregnancies caused their children to suffer birth defects. Out of this group of nineteen, there is one plaintiff family from each of the following states: Connecticut, Maryland, Michigan, New York, Ohio, Oklahoma, Oregon, South Carolina,

[1]The petitioners are twenty of the twenty-five unrelated, non-resident plaintiff families named in two complaints, as discussed more fully, *infra*. Because this litigation involves plaintiffs who are minor children, we use initials in the style of this case. *See* W.Va.R.App.P. 40(e)(1) (restricting use of personal identifiers in matters involving juveniles).

[2]Zoloft is used in the treatment of several disorders, including Major Depressive Disorder, Obsessive-Compulsive Disorder, Panic Disorder, Posttraumatic Stress Disorder, and Social Anxiety Disorder.

1

Texas, Tennessee, and West Virginia—and two plaintiff families from each of the following states: Florida, Louisiana, North Carolina, and Pennsylvania. The respondents, Pfizer, Inc., Roerig, a divison of Pfizer, Inc., and Greenstone, LLC, a subsidiary of Pfizer, Inc., which distributes Zoloft (collectively referred to as "the respondents" or "Pfizer"), were named as defendants in the complaint.

On August 7, 2012, the respondents removed eighteen of these nineteen plaintiff families[3] to the United States District Court for the Southern District of West Virginia on the basis of diversity jurisdiction.[4] The plaintiff families' motion to remand was granted by the federal court.[5] The respondents appealed that ruling to the United States Court

---

[3]The plaintiff family from New York was not removed to federal court as it is not diverse from respondent Pfizer, which is headquartered in New York. On August 12, 2012, Pfizer filed a motion in the circuit court seeking to dismiss the claims asserted by this New York plaintiff family on the basis of forum non conveniens. The circuit court denied the motion. Pfizer sought relief from this ruling through a petition for a writ of prohibition filed in this Court. We summarily refused the petition by order without oral argument and without any discussion on the merits.

[4]*See* 28 U.S.C. § 1332(a) (2012) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different States[.]").

[5]*J.C. ex rel. Cook v. Pfizer, Inc.*, Nos. 3:12-CV-04103, et al., 2012 WL 4442518 (S.D.W.Va. Sept. 25, 2012).

2

of Appeals for the Fourth Circuit.  On July 12, 2013, the Fourth Circuit refused the appeal on the basis that it did "not have the authority" to review the remand order.[6]

Thereafter, the respondents filed a motion seeking to refer the litigation to the Mass Litigation Panel ("the Panel").[7]  By administrative order entered on September 24, 2013, then-Chief Justice Benjamin denied the motion "without prejudice to renew the motion in the event additional state actions [were] filed."[8]  On the heels of this denial, a virtually identical complaint was filed in the Wayne County Circuit Court on October 28, 2013, by six unrelated plaintiff families against Pfizer.  These six new plaintiff families are residents of Illinois, Indiana, Iowa, New York, South Carolina, and West Virginia.  The circuit court entered an order the same day consolidating the two civil actions.

With two civil actions now pending, the twenty-five plaintiff families filed a motion seeking to refer the litigation to the Panel.  While that motion was pending, the respondents filed a second notice of removal in federal court naming all nineteen of the

[6]*E.D. ex rel. Darcy v. Pfizer, Inc.*, 722 F.3d 574, 583 (4th Cir. 2013).

[7]This Court established the Panel to, inter alia, "develop and implement case management and trial methodologies to fairly and expeditiously resolve Mass Litigation referred to the Panel by the Chief Justice[.]"  T.C.R. 26.05(a). Motions to refer litigation to the Panel are provided for in West Virginia Trial Court Rule 26.06.

[8]Trial Court Rule 26.04(a) defines "mass litigation" as two or more civil actions pending in one or more circuit courts.

original plaintiff families. Asserting that the New York family omitted from the first removal had been fraudulently joined, the respondents argued there was complete diversity among the remaining eighteen plaintiff families.[9] Prior to the entry of the federal court order that would, again, grant the plaintiff families' motion to remand,[10] then-Chief Justice Davis transferred the two civil actions to the Panel through an administrative order entered on January 14, 2014.[11]

---

[9]Pfizer did not seek to remove the six new plaintiff families named in the second complaint.

[10]*J.C. ex rel. Cook v. Pfizer, Inc.*, No. 3:13-33048, 2014 WL 495455 (S.D.W.Va. Feb. 5, 2014) (finding partial removal of consolidated case improper and observing that even if all twenty-five plaintiff families had been removed, the existence of two plaintiff families from New York destroyed diversity).

[11]On July 7, 2014, after the referral to the Panel, a new complaint was filed by the same counsel in the Circuit Court of Wayne County naming thirteen unrelated plaintiff families, two of whom are West Virginia residents. The parties represent that the allegations in the complaint were substantively identical to the two prior complaints filed against Pfizer. The respondents filed a motion pursuant to West Virginia Trial Court Rule 26.09 seeking to join these new plaintiff families with the existing Zoloft litigation. The plaintiff families concurred in the motion. Before the motion to refer was ruled upon, the respondents filed a motion in the circuit court seeking to dismiss the eleven non-resident plaintiff families on the basis of forum non conveniens. Two of these families voluntarily dismissed their claims, leaving nine non-resident plaintiff families subject to the motion to dismiss. On August 21, 2014, through prior authorization given to the Panel by the Chief Justice in an amended administrative order entered March 5, 2014, the Panel granted the respondents' motion to refer. A hearing was held on the respondents' motion to dismiss for forum non conveniens. By order entered October 29, 2014, the Panel granted the motion to dismiss. Thereafter, one of the two West Virginia families voluntarily dismissed their claims, leaving one West Virginia family in the third complaint. These nine non-resident plaintiff families have not challenged their dismissal.

Following this referral, the Panel held a status conference on March 4, 2014, in what is now known as *In re: Zoloft Litigation* ("Zoloft litigation"). During this conference, the Panel advised the parties that under Rule 3(a) of the West Virginia Rules of Civil Procedure, the two complaints were actually twenty-five civil actions. Accordingly, the Panel divided the plaintiff families into twenty-five civil actions in an order entered on March 11, 2014. Those families sought a writ of prohibition in this Court to prevent the enforcement of the Panel's order. On May 27, 2014, this Court issued its opinion in *State ex rel. J.C. v. Mazzone*, 233 W.Va. 457, 759 S.E.2d 200 (2014) ("*Mazzone I*"), wherein it granted the writ of prohibition.

In *Mazzone I*, this Court addressed the issue of whether Rule 3(a) allowed the Panel to divide the unrelated plaintiff families into twenty-five separate civil actions, or whether the rule was merely an administrative tool for circuit court clerks to charge unrelated plaintiffs separate filing fees. In addressing this issue, we held, as follows:

> Rule 3(a) of the West Virginia Rules of Civil Procedure provides that "[f]or a complaint naming more than one individual plaintiff not related by marriage, a derivative or fiduciary relationship, each plaintiff shall be assigned a separate civil action number and be docketed as a separate civil action and be charged a separate fee by the clerk of a circuit court." Rule 3(a) is an administrative fee and record keeping provision. The use of multiple case docket numbers is for the purpose of assessing and tracking filing fees, and for tracking documents that may apply to individual plaintiffs. Rule 3(a) does not provide authority for severing a complaint substantively into two or more separate civil cases.

5

*Id.*, at 459, 759 S.E.2d at 202, syl. pt. 3. We further stated in *Mazzone I* that while the parties were permissibly joined under Rule 20 of the West Virginia Rules of Civil Procedure,

> nothing prevents the Panel from using procedural mechanisms to procedurally divide the plaintiffs and defendants into any number of relevant groups, so long as no substantive division occurs . . . . Moreover, to the extent that some plaintiffs may be subject to dispositive motions based upon such issues as statutes of limitation or summary judgment, the Panel also is free to devise a scheme that permits the defendants to raise those issues and have them addressed separately. In addition to these examples, the Panel also may craft solutions to address other procedural issues that may arise.

233 W.Va. at 474, 759 S.E.2d at 217. The Zoloft litigation was remanded to the Panel.

On June 24, 2014, the Panel entered a Case Management Order[12] scheduling various hearings, setting a trial date, and establishing deadlines, including a July 9, 2014, deadline for Rule 12 motions to dismiss. The petitioners did not raise an objection to the Case Management Order, generally, nor to the Rule 12 deadline, specifically.

In conformity with the deadline set forth in the Case Management Order, the respondents filed a motion on July 9, 2014, seeking to dismiss twenty-two non-resident

---

[12]Case management orders are authorized under West Virginia Trial Court Rule 26.08(d), which is discussed, *infra.*

plaintiff families[13] on the basis of forum non conveniens under West Virginia Code § 56-1-1a (2012), including the New York plaintiff family who had been the subject of the motion to dismiss in the Wayne County Circuit Court. The respondents argued that *Mazzone I* clarified the Panel's authority to treat the plaintiff families individually, including for purposes of dispositive motions. Following a hearing on the motion, the Panel unanimously granted, in part, the respondents' motion to dismiss by order entered October 21, 2014.

In its dismissal order, the Panel found that the motion was timely filed as it met the deadline for such motions in the Case Management Order. Upon consideration of the eight factors set forth in the forum non conveniens statute, West Virginia Code § 56-1-1a(a)(1-8),[14] as well as the degree of deference to be accorded to the non-resident plaintiffs' choice of forum under this statute, the Panel dismissed, without prejudice, twenty of the twenty-two plaintiff families named in the motion to dismiss, including the New York plaintiff family. With regard to the two plaintiff families from Texas and Michigan, the Panel stated in its order that the respondents' counsel conceded that the claims asserted by the Texas and Michigan families would be precluded under Michigan and Texas law.

---

[13]The respondents did not name the two West Virginia families or the Ohio family with ties to West Virginia in their motion to dismiss.

[14]These statutory factors are quoted, in full, *infra*.

Accordingly, the Panel denied the motion to dismiss as to these two families.[15]  Therefore, of the original twenty-five plaintiff families, five remain: two from West Virginia; one from Ohio with ties to West Virginia; one from Texas; and one from Michigan.  The petitioners seek a writ of prohibition in this Court to prevent enforcement of the Panel's dismissal order.

## II.  Standard for Issuance of a Writ of Prohibition

In the matter before us, the petitioners seek to prohibit the enforcement of an order dismissing them from the Zoloft litigation on the basis of forum non conveniens.  They challenge the timeliness of the respondents' motion to dismiss.  Because that motion was filed within the time frame set by the Panel in its Case Management Order, the petitioners' challenge is essentially directed toward that order.  West Virginia Trial Court Rule 26.08(d)[16] provides the Panel's lead presiding judge with the "authority" to enter such orders.

---

[15]In denying the motion to dismiss as to the Texas and Michigan families, the Panel stated that

> the presumption that alternate forums exist may be defeated "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all.  In such cases, the alternate forum ceases to 'exist' for purposes of forum non conveniens, and dismissal in favor of that forum would constitute error."  Syl. Pt. 9 [in part], *Mace* [*v. Mylan Pharm., Inc.*], 227 W.Va. 666, 668, 714 S.E.2d 223, 225 (2011).

[16]West Virginia Trial Court Rule 26.08(d) provides that "[t]he Presiding Judge is authorized to adopt a case management order . . . and, after considering the due process rights of the parties, to adopt any procedures deemed appropriate to fairly and efficiently manage and resolve Mass Litigation."

8

"Prohibition will lie to prohibit a judge from exceeding his legitimate powers." Syl. Pt. 2,

*State ex rel. Winter v. MacQueen*, 161 W.Va. 30, 239 S.E.2d 660 (1977).[17]  In this regard,

we rely upon those factors set forth in syllabus point four of *State ex rel. Hoover v. Berger*,

199 W.Va. 12, 483 S.E.2d 12 (1996):

> [i]n determining whether to entertain and issue the writ of
> prohibition . . . this Court will examine five factors: (1) whether
> the party seeking the writ has no other adequate means, such as
> direct appeal, to obtain the desired relief; (2) whether the
> petitioner will be damaged or prejudiced in a way that is not
> correctable on appeal; (3) whether the lower tribunal's order is
> clearly erroneous as a matter of law; (4) whether the lower
> tribunal's order is an oft repeated error or manifests persistent
> disregard for either procedural or substantive law; and (5)
> whether the lower tribunal's order raises new and important
> problems or issues of law of first impression. These factors are
> general guidelines that serve as a useful starting point for
> determining whether a discretionary writ of prohibition should
> issue. Although all five factors need not be satisfied, it is clear
> that the third factor, the existence of clear error as a matter of
> law, should be given substantial weight.

---

[17]We observe a notable difference between West Virginia Trial Court 26.08(d) and its substantive equivalent, Rule 16(b) of the West Virginia Rules of Civil Procedure. Rule 16(b) states, in part, that "the judge *shall* . . . enter a scheduling order . . . ." *Id.* (emphasis added). The use of the word "shall" in this rule expresses a mandatory intent. *See* Syl. Pt. 2, in part, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969) ("The word 'shall,' in the absence of language in the statute showing a contrary intent . . . should be afforded a mandatory connotation."). The word "shall" does not appear in Trial Court Rule 26.08(d), which merely authorizes the entry of case management orders; therefore, such case management orders are arguably permissive or discretionary, rather than mandatory. While prohibition does not lie to prevent an abuse of discretion by a trial court, upon reviewing the timeliness issue and whether the Panel exceed its legitimate powers in setting a Rule 12 motion deadline, we find no error, as discussed *infra*. *See* Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977) ("A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.").

9

The petitioners also challenge the substance of the Panel's forum non conveniens ruling. In this regard, we have held that "[a] circuit court's decision to invoke the doctrine of *forum non conveniens* will not be reversed unless it is found that the circuit court abused its discretion." Syl. Pt. 3, *Cannelton Indus., Inc. v. Aetna Cas. & Sur. Co. of Am.*, 194 W.Va. 186, 460 S.E.2d 1 (1994).[18] Carving out an exception to the general proposition that prohibition does not lie to review discretionary rulings,[19] we have explained that

> [i]n the context of disputes over venue, such as dismissal for forum non conveniens . . . a writ of prohibition is an appropriate remedy "to resolve the issue of where venue for a civil action lies," because "the issue of venue [has] the potential of placing a litigant at an unwarranted disadvantage in a pending action and [] relief by appeal would be inadequate." *State ex rel. Huffman v. Stephens*, 206 W.Va. 501, 503, 526 S.E.2d 23, 25 (1999); *see also State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 124, 464 S.E.2d 763, 766 (1995) ("In recent times in every case that has had a substantial legal issue regarding venue, we have recognized the importance of resolving the issue in an original action.").

*State ex rel. Mylan, Inc. v. Zakaib*, 227 W.Va. 641, 645, 713 S.E.2d 356, 360 (2011). With these standards in mind, we proceed to determine whether a writ of prohibition should be granted.

---

[18]In *Cannelton Industries*, this Court discussed the common law doctrine of forum non conveniens. In 2007, the Legislature codified this doctrine in West Virginia Code § 56-1-1a.

[19]*See supra* note 17.

## III. Discussion

### A. Timeliness of Motion to Dismiss

The petitioners challenge the timeliness of the respondents' motion to dismiss for forum non conveniens. Under West Virginia Code §56-1-1a, a forum non conveniens motion is timely if it is filed "either concurrently or prior to the filing of . . . a motion pursuant to Rule twelve of the West Virginia Rules of Civil Procedure . . . ." The Panel found that the respondents' motion was timely filed because it met the deadline for Rule 12 motions set forth in its Case Management Order. *See* Franklin D. Cleckley, Robin Jean Davis, & Louis J. Palmer, Jr., Litigation Handbook on West Virginia Rules of Civil Procedure, §12(b)(3)[4], at p. 373-75 (4th ed. 2012) (addressing forum non conveniens in context of motions to dismiss under Rule 12(b)(3)).[20]

---

[20]Typically, we would not expect to see a Rule 12 motion deadline in litigation that had been pending, in part, for nearly two years at the time the Case Management Order was entered. *But see In re: Digitek® Litigation*, Apr. 2, 2010 Order, Mass Litigation Panel (dismissing claims of two plaintiffs from mass litigation on basis of forum non conveniens where complaints were filed approximately fifteen and eighteen months earlier). However, as can readily be seen from the factual recitation set forth above, prior to the attempted referral to the Panel in the fall of 2013, this litigation primarily involved two removals to federal court, including an appeal to the Fourth Circuit. Thereafter, the litigation was referred to the Panel after which the litigation involved the petitioners' pursuit of a writ of prohibition in *Mazzone I*. Consequently, once this litigation was remanded to the Panel in May of 2014, following *Mazzone I*, the Panel plainly recognized the unique circumstances presented in this litigation, including the fact that the matter had not progressed very far despite the lapse of time since the filing of the first complaint. Although we also recognize these unique circumstances, we remind the Panel that its discretion and authority is not limitless. While "we fully intend to allow the supervising [Panel] judge to continue to fashion and implement various trial management plans . . . . this Court may choose to exercise its constitutional grant of powers if, and when, issues of constitutional or

(continued...)

In *Mazzone I*, this Court expressed its "support [of] the Panel's need to have some discretion in processing the numerous issues that necessarily flow from mass litigation cases." 233 W.Va. at 474, 759 S.E.2d at 217. Recognizing the Panel's "authority to implement procedural mechanisms to address the numerous individual and collective unique issues that are inherent in mass litigation[,]" we further stated that "[o]ur Rules of Civil Procedure provide a host of mechanisms for the Panel to use in efficiently processing mass litigation cases." *Id.* In fact, we informed the Panel that "to the extent that some plaintiffs may be subject to dispositive motions[,]" it was "free to devise a scheme that permits the defendants to raise those issues and have them addressed separately[,]" which the Panel did in its Case Management Order. *Id.* Indeed, long before *Mazzone I*, this Court recognized that the

> management of [mass tort] cases cannot be accomplished without granting the trial courts assigned to these matters significant flexibility and leeway with regard to their handling of these cases. A critical component of that required flexibility is the opportunity for the trial court to continually reassess and evaluate what is required to advance the needs and rights of the parties within the constraints of the judicial system. Out of this need to deal with "mass litigation" cases in non-traditional and often innovative ways, TCR 26.01 was drafted and adopted.[21]

---

[20](...continued)
overarching significance arise that demand immediate relief." *State ex rel. Mobil Corp. v. Gaughan*, 211 W.Va. 106, 114, 563 S.E.2d 419, 427 (2002). We do not find such issues under the facts and circumstances of this litigation.

[21]West Virginia Trial Court Rule 26.01 established the Mass Litigation Panel, and Trial Court Rules 26.01 through Rule 26.12 pertain to mass litigation.

*State ex rel. Mobil Corp. v. Gaughan*, 211 W.Va. 106, 111, 563 S.E.2d 419, 424 (2002) (footnote added).

In the case at bar, the Panel clearly evaluated the status of the Zoloft litigation during the scheduling/status conference that was held soon after the remand in *Mazzone I*. The information garnered during that conference led to the Panel's entry of the Case Management Order six days later, which included a deadline for Rule 12 motions that resultantly extended the deadline for motions for forum non conveniens.[22] W.Va.R.Civ.P. 12. Indeed, the Panel has great discretion under our mass litigation rules[23] to implement case management plans and orders–even where they may conflict with another rule or statute.[24] Accordingly, we find that the Panel had the authority to enter a case management order that established a deadline for Rule 12 motions. As such, the respondents' motion, filed in conformance with the Case Management Order, was timely.

Moreover, even if we were to assume, arguendo, that it was error, there is still no basis to issue the requested writ. In *Bowman v. Barnes*, 168 W.Va. 111, 282 S.E.2d 613 (1981), the trial court effectively extended the time period for a motion for a new trial filed

---

[22]W.Va. Code § 56-1-1a(b).

[23]*See supra* notes 16, 20, and 21.

[24]West Virginia Trial Court Rule 26.12 provides, in part, that "[i]f these Rules conflict with other rules or statutes, these rules shall apply[.]"

13

pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. The defendants

challenged that ruling on the basis that another West Virginia Rule of Civil Procedure–Rule

6–specifically precludes a trial court from extending the time for taking action under Rule

59. In addressing this issue, this Court held:

> Where a trial court makes an erroneous ruling extending
> a time period under the Rules of Civil Procedure, and one of the
> parties relies on the ruling, such party will not be foreclosed
> from further pursuit of his claim because of this error. This is
> particularly true where the opposing party acquiesces or fails to
> object to the erroneous ruling at the time it was made.

*Bowman*, 168 W.Va. 111, 282 S.E.2d 613, syl. pt. 1;[25] *see also Roberts v. Consolidation Coal*

*Co.*, 208 W.Va. 218, 227, 539 S.E.2d 478, 487 (2000) (citing *Bowman* with approval).

During oral argument, the petitioners conceded that they did not object to the inclusion of a

---

[25]In *Bowman*, the Court relied upon *Thompson v. Immigration and Naturalization Service*, 375 U.S. 384 (1964), and *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215 (1962). Both *Thompson* and *Harris* involved a challenge to the timeliness of an appeal where the trial court extended the time period under the rules of civil procedure for filing an appeal. In a recent five to four majority opinion, the United States Supreme Court overruled both *Thompson* and *Harris* "to the extent they purport to authorize an exception to a jurisdictional rule." *Bowles v. Russell,* 551 U.S. 205, 214 (2007). Clarifying the difference between time limit rules that are "jurisdictional," versus those that are "claims-processing," the Court noted its "longstanding treatment of statutory time limits for taking an appeal as jurisdictional[.]" *Id.* at 210. Because forum non conveniens presupposes a court's jurisdiction, rather than conferring it, our holding in *Bowman* remains good law for our current purposes. *See Mylan*, 227 W.Va. at 643 n.1, 713 S.E.2d at 358 n.1 ("[I]t is generally recognized that a motion to dismiss on the basis of forum non conveniens presupposes that the court in which the action is filed . . . has jurisdiction . . . in which to hear the claims.").

14

Rule 12 deadline in the Case Management Order.[26] *See* W.Va.R.Civ.P. 12. In the absence of any objection, the respondents relied upon the Rule 12 deadline in the Case Management Order and filed their motion to dismiss pursuant to the order. Accordingly, even if the Panel erred in setting a Rule 12 deadline in its Case Management Order, under *Bowman*, the respondents' motion to dismiss would still be timely filed. 168 W.Va. 111, 282 S.E.2d 613, syl. pt.1.

### B. Dismissal for forum non conveniens

The petitioners assert that the Panel erred in dismissing twenty of the non-resident plaintiff families on the basis of forum non conveniens. They argue that the Panel's ruling disregards the "letter and spirit" of *Mazzone I*, including directions that the Panel not substantively divide the petitioners. The petitioners further argue that the Panel erred in its consideration of the statutory factors governing forum non conveniens under West Virginia Code § 56-1-1a by failing to give any deference to their choice of forum and by crediting respondents' unsupported factual allegations in its evaluation of certain of these factors, all to the petitioners' prejudice.

---

[26]We observe that the petitioners had two weeks during which they could have objected to the Panel's Case Management Order.

15

Conversely, the respondents assert that following the general remand in *Mazzone I*, the Panel appropriately exercised its discretion in managing the pretrial aspects of the litigation, including its resolution of the respondents' motions as to certain plaintiff families' claims based on the facts particular to those families and within the framework set by this Court and under West Virginia law. The respondents also argue that the Panel correctly evaluated each of the eight statutorily mandated factors in making its forum non conveniens ruling.

Our focus in *Mazzone I* was the Panel's interpretation and application of Rule 3(a) of the West Virginia Rules of Civil Procedure for the purpose of converting the two civil actions referred to the Panel into twenty-five separate civil actions. Our discussion of permissive joinder in *Mazzone I* was directly related to our analysis of the intent and purpose of Rule 3(a), an administrative fee-collecting rule. We also recognized that "to the extent that *some plaintiffs may be subject to dispositive motions*[,]"[27] the Panel was "free to devise a scheme that permits the defendants to raise those issues and have them *addressed separately*." *Mazzone I*, 233 W.Va. at 474, 759 S.E.2d at 217 (emphasis added). Clearly, a motion to dismiss is a dispositive motion.[28] And, while we cautioned the Panel against a

[27]The Court gave as examples motions based on statutes of limitation or summary judgment. *Mazzone I*, 233 W.Va. at 474, 759 S.E.2d at 217.

[28] *See State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W.Va. 770, 775, 461 S.E.2d 516, 521 (1995) (referring to defendants' motion to dismiss as "dispositive (continued...)

16

division of the parties as it had done under its misinterpretation of Rule 3(a), "[f]orum non

conveniens is not a *substantive* right of the parties, but a *procedural* rule of the forum." *State*

*ex rel. North River Ins. Co. v. Chafin*, 233 W.Va. 289, 294, 758 S.E.2d 109, 114 (2014)

(citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 454 n.4) (emphasis added).


In the context of our Rule 3(a) analysis, we also found that "[t]he claims

alleged in the complaints are logically related and arise from the same transactions or

occurrences, *i.e.*, the production, distribution, and promotion of Zoloft[,]" thereby satisfying

permissive joinder under Rule 20(a) of the West Virginia Rules of Civil Procedure.[29]

*Mazzone I*, 233 W.Va. at 464, 759 S.E.2d at 207. Permissive joinder of parties under Rule

20 "is to be liberally construed." *Anderson v. McDonald*, 170 W.Va. 56, 60, 289 S.E.2d 729,

734 (1982). Thus, we concluded in *Mazzone I* that if we had "sought to achieve the Panel's

---

[28](...continued)
pretrial motion[]"); *Zaleski v. West Virginia Mut. Ins. Co.*, 224 W.Va. 544, 551, 687 S.E.2d 123, 130 (2009) ("[A]t no time did this Court make a *dispositive* ruling 'granting' the Mutual's *motion to dismiss*.") (emphasis added); *Randall v. Fairmont City Police Dep't*, 186 W.Va. 336, 339, 412 S.E.2d 737, 740 (1991) ("The *dispositive* procedural issue, however, is the propriety of the *dismissal* of the action . . . .") (emphasis added).

[29]West Virginia Rule of Civil Procedure 20(a) provides, in part, that

> [a]ll persons may join in one action as plaintiffs if they
> assert any right to relief jointly, severally, or in the alternative in
> respect of or arising out of the same transaction, occurrence, or
> series of transactions or occurrences and if any question of law
> or fact common to all these persons will arise in the action.

interpretation of Rule 3(a), we necessarily would have had to abolish Rule 20(a)." 233 W.Va. at 469, 759 S.E.2d at 212.

Similarly, we believe that the petitioners' interpretation of *Mazzone I* as precluding the Panel's forum non conveniens ruling would essentially render West Virginia Code § 56-1-1a a nullity in pharmaceutically-related litigation. In other words, any drug will necessarily be "produc[ed], distribut[ed], and promot[ed]" by the drug's manufacturer. 233 W.Va. at 464, 759 S.E.2d at 207. Persons alleging similar complaints arising from the ingestion of a drug will undoubtedly have common questions of fact concerning "the design of [the drug], the [manufacturer's] knowledge of the drug's safety, and [its] representations about its safety." *Id.* at 465, 759 S.E.2d at 208. Consequently, the ability to meet the liberal standard for Rule 20(a) does not correspondingly guarantee the existence of a convenient forum, as is apparent under the facts and circumstances of the Zoloft litigation.[30]

---

[30]Other than citing the spirit and letter of *Mazzone I*, the petitioners have not provided any legal authority demonstrating the erroneous application of forum non conveniens principles in this matter beyond their challenge to the timeliness of Pfizer's motion to dismiss and to the Panel's analysis of the statutory factors under West Virginia Code § 56-1-1a. We note that the nine non-resident plaintiff families named in the third Zoloft complaint have not challenged their dismissal on the basis of forum non conveniens, which Pfizer's counsel pointed out during oral argument. In the absence of any responsive argument or explanation to the point raised, we are left with an implicit concession that permissively joined plaintiffs can be dismissed on that basis.

We recognize that permissive joinder under Rule 20(a) is designed to expedite litigation and relieve the burden on the courts and the litigants by allowing a single suit to determine the rights and liabilities of the parties. This purpose is necessarily attenuated when considered in the context of multiple parties from multiple states who have no connection to West Virginia and whose causes of action did not arise in West Virginia. While there can be factors that favor joinder, we cannot ignore the countervailing concerns associated with litigating claims in a convenient forum.

The Panel acquired sufficient information from the parties to recognize the difficulties and complexities that would most assuredly arise through litigating the claims of twenty-two non-resident plaintiff families from sixteen different states whose causes of action arose in those other states. As we have previously held,

> [t]he doctrine [of forum non conveniens] accords a preference to the plaintiff's choice of forum, but the defendant may overcome this preference by demonstrating that the forum has only a slight nexus to the subject matter of the suit and that another available forum exists which would enable the case to be tried substantially more inexpensively and expeditiously.

Syl. Pt. 3, in part, *Norfolk and Western Ry. Co. v. Tsapis*, 184 W.Va. 231, 400 S.E.2d 239 (1990).[31] Accordingly, after considering all of the above in conjunction with the broad discretion given to the Panel "to continually reassess and evaluate what is required to

---

[31]*See supra* note 18.

advance the needs and rights of the parties within the constraints of the judicial system[,]"[32]

we conclude that under the unique circumstances of this particular litigation, the Panel

properly entertained the respondents' motion to dismiss for forum non conveniens.[33]

Finally, we turn to the substance of the Panel's forum non conveniens ruling.

West Virginia Code § 56-1-1a provides, in relevant part, as follows:

> (a) In any civil action if a court of this state, upon a timely written motion of a party, finds that *in the interest of justice and for the convenience of the parties a claim or action would be more properly heard in a forum outside this State*, the court shall decline to exercise jurisdiction under the doctrine of forum non conveniens and shall stay or dismiss the claim or action, or dismiss any plaintiff: Provided, That *the plaintiff's choice of a forum is entitled to great deference, but this preference may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this State.* In determining whether to grant a motion to stay or dismiss an action, or dismiss any plaintiff under the doctrine of forum non conveniens, the court shall consider:
>
> (1) Whether an alternate forum exists in which the claim or action may be tried;
>
> (2) Whether maintenance of the claim or action in the courts of this State would work a substantial injustice to the moving party;

---

[32]*Mobil Corp.*, 211 W.Va. at 111, 563 S.E.2d at 424.

[33]We do not undertake in this opinion to announce any new point of law. Permissive joinder and forum non conveniens will necessarily be assessed under the peculiar facts and circumstances of each case.

(3) Whether the alternate forum, as a result of the submission of the parties or otherwise, can exercise jurisdiction over all the defendants properly joined to the plaintiff's claim;

(4) The state in which the plaintiff(s) reside;

(5) The state in which the cause of action accrued;

(6) Whether the balance of the private interests of the parties and the public interest of the State predominate in favor of the claim or action being brought in an alternate forum, which shall include consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this State. Factors relevant to the private interests of the parties include, but are not limited to, the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Factors relevant to the public interest of the State include, but are not limited to, the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the State; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty;

(7) Whether not granting the stay or dismissal would result in unreasonable duplication or proliferation of litigation; and

(8) Whether the alternate forum provides a remedy.

*Id.* (emphasis added).

In undertaking a forum non conveniens analysis, we have held that circuit courts "must consider the eight factors enumerated in West Virginia Code § 56-1-1a . . . as

21

a means of determining whether, in the interest of justice and for the convenience of the parties, a claim or action should be . . . dismissed on the basis of forum non conveniens." Syl. Pt. 5, in part, *Mylan*, 227 W.Va. at 642-43 357-58, 713 S.E.2d at 357-58. We further held in *Mylan* that "[i]n all decisions on motions made pursuant to West Virginia Code § 56-1-1a . . . courts must state findings of fact and conclusions of law as to each of the eight factors listed for consideration under subsection (a) of that statute." *Id.*, 227 W.Va. at 643, 713 S.E.2d at 358, syl. pt. 6, in part. We have also recognized that "[t]he weight assigned to each factor varies because each case turns on its own unique facts." *North River*, 233 W.Va. at 295, 758 S.E.2d at 115. We find that the Panel has entered a thorough order addressing these statutory factors as required by *Mylan*.

Through their challenge to the substance of the Panel's forum non conveniens ruling, the petitioners make several unavailing arguments. While they generally maintain that the Panel gave no deference to their choice of forum and misapplied these eight statutory factors, they focus on the second statutory factor (whether the maintenance of their claims in West Virginia would work a substantial injustice on the respondents), the sixth factor (balancing the public interest of the state and the private interests of the parties), and the seventh factor (unreasonable duplication and proliferation of litigation). We will, likewise, focus our discussion on these particular statutory factors. Before doing so, however, we will first address the petitioners' choice of forum.

22

As non-residents whose causes of action did not arise in West Virginia, the petitioners concede that the deference accorded their choice of forum may be diminished. They argue, however, that the Panel gave no deference to their choice of forum and did not consider the effect of the West Virginia plaintiffs' choice of forum, which is entitled to great deference.[34] In disagreement, the respondents assert that the Panel correctly observed that the deference afforded to a plaintiff's choice of forum "may be diminished when the plaintiff is a nonresident and the cause of action did not arise in this State." W.Va. Code § 56-1-1a(a). The Panel found it indisputable that all of the petitioners reside–and their causes of action arose–in states other than West Virginia. Consequently, the Panel concluded that their "choice of forum is entitled to less deference."[35] We find no error in the Panel's conclusions in this regard.

Turning to the second statutory factor, the petitioners assert that the Panel relied upon the respondents' unsupported factual allegations in reaching its conclusion that the petitioners have no connection to West Virginia and that trying their claims in West

---

[34]Although the petitioners argue their choice of forum is entitled to deference because their claims are joined to the claims of the West Virginia families, the Panel noted that Rule 20(a) provides that "judgment may be given for one or more of the plaintiffs[.]"

[35]Even if the Panel had not given any deference to the petitioners' choice of forum, it might not necessarily have been error. *See Mylan*, 227 W.Va. at 648, 713 S.E.2d at 363 ("Nothing in the statute requires a court to diminish, or abolish altogether, the deference it normally affords a plaintiff's choice of forum. Rather, it permits courts to do so, when the precedent factors have been met.").

Virginia would result in "substantial injustice." *See* W.Va. Code § 56-1-1a(a)(2). They posit that their dismissal at this point in the litigation will result in extreme prejudice to them, and that the connection between their claims and West Virginia is the fact that they have been litigating their claims in West Virginia; that more plaintiffs are from West Virginia than from any other state;[36] and that the respondents conduct a substantial amount of business in West Virginia through marketing and selling Zoloft. As for the Panel's conclusion that interstate discovery would be "complicated and expensive," the petitioners contend this conclusion is inaccurate and is based on the respondents' "flimsy allegations."[37]

Conversely, the respondents assert that the Panel based its factual findings on the record and did not err in acknowledging that the process of obtaining interstate discovery through letters rogatory is more complicated and expensive than obtaining intrastate discovery through ordinary subpoenas. The respondents observe that because the subject

[36]This statement is misleading to the extent it implies that the majority of the plaintiffs are West Virginia residents when, in fact, the overwhelming majority of plaintiffs are from states other than West Virginia. Of the twenty-five plaintiff families in the Zoloft litigation at the time of the remand in *Mazzone I*, two were residents of West Virginia, a third had ties to West Virginia, and the remaining twenty-two resided in sixteen different states.

[37]The petitioners also cite the reasoning of the Wayne County Circuit Court in its order denying Pfizer's motion to dismiss the New York plaintiff family on the basis of forum non conveniens, including its conclusion that treating physicians rarely appear in mass tort cases and that the consolidation of the plaintiff families avoids unnecessary costs and delays. The circuit court's ruling is not binding upon this Court. Further, it does not warrant a finding that the Panel either misinterpreted West Virginia Code § 56-1-1a or abused its discretion by its application of that statute, particularly since this litigation was in a different posture at the time of the Panel's forum non conveniens ruling.

24

plaintiff families are from sixteen states, their respective treating physicians, prescribing physicians, dispensing pharmacists, and other third-party witnesses are located in those, and potentially other, states. Citing the Panel's lack of subpoena power to compel the attendance of these witnesses at depositions or trial, or to compel the production of documents in the possession of these non-party witnesses, the respondents assert that the parties will bear the burden and expense of filing separate individual lawsuits in the home state of each non-party witness to secure subpoena power from the courts in those states. The respondents further note that even where witnesses are willing, the costs associated with obtaining their attendance at deposition and trial "would not be insubstantial and would involve significant travel expense."

Echoing the respondents' arguments concerning the second statutory factor, the Panel found that "West Virginia's lack of connection to this litigation coupled with the difficulty of compelling or voluntarily securing witnesses for deposition and trial would work a substantial injustice to both Plaintiffs and Defendants[.]" As the Panel correctly observed, all of the evidence, witnesses, and locations relevant to the petitioners' claims will be located in their respective home states. Confirming the respondents' arguments, the Panel cited its lack of subpoena power to compel the attendance of non-party witnesses at deposition or trial or to compel the production of documents in the possession of non-parties, a fact the

25

petitioners do not dispute.[38] The Panel further found that the considerable distance between West Virginia and the petitioners' home states would render interstate discovery and procuring the voluntary attendance of non-party witnesses for depositions and trial more complicated and expensive. These factors–coupled with West Virginia's lack of connection to the non-resident plaintiffs' claims–were found by the Panel to "work a substantial injustice to both Plaintiffs and Defendants."

The sixth statutory factor balances the public interest of the state against the private interest of the parties, including a "consideration of the extent to which an injury or death resulted from acts or omissions that occurred in this State." W.Va. Code § 56-1-1a(a)(6). The petitioners argue that litigating the claims of the remaining plaintiff families in West Virginia, including two West Virginia families, favors keeping all plaintiff families joined as it would impose no additional burden on West Virginia judges or juries. In complete disagreement, the respondents assert that the petitioners' argument "rests on the unsupportable premise that trying the claims of twenty-five Plaintiff Families will take no more time and no more attention from citizens called for jury duty or West Virginia judges, than trying the claims of five Plaintiff Families."

_____

[38]By way of illustration, the supplemental appendix record contains a preliminary witness list for a few of the plaintiff families. There are fifteen healthcare providers located in the states of North Carolina and South Carolina listed for one plaintiff family, and fourteen healthcare providers located in the states of California and Oklahoma listed for another plaintiff family.

As indicated above, the factors relevant to private interests of the parties include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

W.Va. Code § 56-1-1a(a)(6). In weighing these particular considerations, the Panel made findings similar to those it made concerning the second factor, after which it concluded that each of the "private interests weighs in favor of dismissal" and "favors litigation in the subject Plaintiff Families' home states where a significant amount of such proof is located."

The sixth statutory factor also requires the consideration of the public interest of this state, including "the administrative difficulties flowing from court congestion; the interest in having localized controversies decided within the State; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty[.]" W.Va. Code § 56-1-1a(a)(6). The Panel cited the administrative difficulties flowing from court congestion associated with trying the claims of twenty-two non-resident plaintiff families in West Virginia against non-resident defendants. Another public interest concern cited by the Panel was the unreasonableness of imposing jury duty on West Virginia citizens who would be required to devote significant time to complicated issues involving each plaintiff mother's

27

alleged ingestion of Zoloft and the alleged resultant birth defects to the non-resident minor plaintiffs. Recognizing that West Virginia law cannot govern the petitioners' claims because their alleged injuries arose in other states, the Panel would be required to the apply the laws of sixteen different states. Thus, the Panel acknowledged the conspicuous advantages to conducting trials in the petitioners' home states where the courts are familiar with their respective state's laws. After balancing the petitioners' private interests against the state's public interests, the Panel concluded that the public interests of the state predominate in favor of the petitioners bringing their claims in their home states.[39]

Turning to the duplication or proliferation of litigation–the seventh statutory factor[40]–the petitioners assert that the Panel failed to give adequate weight to the fact that they have been litigating their properly joined claims for two years, describing discovery as being "far along."[41] The petitioners contend that forcing them to re-file in their home states

---

[39]In this regard, the Panel found that "the subject Plaintiff Families' respective home states have a substantial interest in resolving disputes involving their residents who were allegedly injured in those states by the prescription and ingestion of a medication therein."

[40]W.Va. Code § 56-1-1a(a)(7).

[41]During oral argument, the respondents' counsel stated that as of the time they filed their motion to dismiss before the Panel, only minimal discovery has been directed to the petitioners. The respondents' counsel also stated that Pfizer had produced the same three million pages of documents in every court where Zoloft litigation is pending and that seventeen depositions had been taken of current and former Pfizer employees, which were cross-noticed in the other courts from the federal multi-district litigation. All counsel agree that an extraordinary amount of discovery remains to be done.

will mean that they will start at "ground zero," resulting in the duplication and proliferation of litigation. Disagreeing with the petitioners' "ground zero" prediction, the respondents assert that any plaintiff family who re-files in their home state will have access to the significant discovery that Pfizer has already produced. Further, the respondents represent that the initial discovery directed toward Pfizer, which has been completed thus far in similar Zoloft claims pending in the federal multi-district litigation in Pennsylvania, as well as in eight other state courts, is readily transferrable to any re-filed proceeding in the respective home states of the petitioners.

Upon its consideration of the seventh statutory factor, the Panel agreed with the respondents, describing the discovery conducted thus far as being extensive with regard to the respondents but only in its initial stages with regard to the plaintiff families. The Panel further agreed that all discovery conducted thus far is "readily transferrable to any re-filed proceeding in a subject Plaintiff Family's home state." Observing that none of the petitioners' claims have been adjudicated on the merits, the Panel found there would be no "unnecessary re-litigation of issues." Based on the respondents' representation that the parties and courts involved in similar Zoloft litigation[42] have been coordinating their efforts in terms of discovery and other pretrial matters, the Panel concluded that the dismissal of the

[42]This is a reference to the federal multi-district litigation pending in Pennsylvania, as well as the Zoloft litigation pending in other state courts.

29

petitioners "will not significantly expand the scope or geographical breadth of the Zoloft litigation."[43]

Based upon our consideration of all of the above, we find no error in the Panel's decision to dismiss the twenty non-resident plaintiff families on the basis of forum non conveniens under the particular facts, circumstances, and procedural history of this litigation. West Virginia has no real interest in trying non-resident plaintiffs' claims against non-resident defendants involving causes of action that accrued in states other than West Virginia. Because the petitioners' claims arose in other states, their cases can "be tried substantially more inexpensively and expeditiously" in those other states where the sources of proof will be more easily accessible. Syl. Pt. 3, in part, *Tsapis*, 184 W.Va. 231, 400 S.E.2d 239. Moreover, the applicable and governing law in those other states is more readily applied by the courts of those states. Importantly, the judges and jurors in the petitioners' home states would not be impositioned by having to determine disputes involving individuals who allegedly sustained injuries while residing in those states. Under the *Hoover* factors,[44] we find no ground to warrant the issuance of a writ of prohibition.

---

[43]The petitioners do not challenge the Panel's ruling with respect to the eighth statutory factor–whether the alternate forum provides a remedy. As discussed previously, the Panel denied the respondents' motion to dismiss two of the non-resident plaintiff families after determining that there was no alternative forum in Texas and Michigan. Because the petitioners do not specifically challenge the Panel's rulings on the remaining statutory factors, they will not be addressed.

[44]Syl. Pt. 4, *Hoover*, 199 W.Va. 12, 483 S.E.2d 12.

30

### III.  Conclusion

For the reasons stated above, there is no basis to prevent the Panel from enforcing its dismissal order entered on October 21, 2014.  Accordingly, the writ of prohibition is denied.

Writ denied.